[S. F. No. 20730. In Bank. Oct. 25, 1962.]

SHELLEY R. COTHRAN, Individually and as Executor, etc., Plaintiff and Appellant, v. SAN JOSE WATER WORKS, Defendant and Respondent.

Everett P. Rowe for Plaintiff and Appellant.

C. B. Leib, Leib & Leib, Robert Minge Brown and Mc-Cutchen, Doyle, Brown & Enersen for Defendant and Respondent.

THE COURT.—Preliminarily we must decide the question whether this court has acquired jurisdiction to act upon the appeal herein. This question arises from the following circumstances. It is the uniform and long-established practice of this court to meet in conference at least once each week to discuss and consider whether to grant or deny petitions for hearing after decision in the District Courts of Appeal, petitions for rehearing, and petitions in original proceedings. However, if one of the justices for any reason cannot attend a particular conference, such justice not infrequently affixes his signature to orders granting such petitions as he may determine should be granted, either in advance of or following the conference which he is unable to attend. In this respect our practice follows the same pattern as that followed by this court in 1910 as explained in the statement of the court found in *People* v. *Ruef*, 14 Cal.App. 576, 621-623 [114 P. 48, 54].

Following this practice Mr. Justice Schauer, who was leaving the State of California for a vacation before the conference at which the petition for hearing in this case after its

decision in the District Court of Appeal was to be considered, signed the order granting a hearing before his departure. Three other justices of this court signed the same order following the consideration of the petition for hearing in conference and the order was filed. At the time that the order was signed by the other justices, Mr. Justice Schauer was outside of this state and he continued to be outside of its boundaries until after the time for action on the petition for hearing in this case had expired. This presents the question of the validity of the order under the decision of this court in *People* v. *Ruef*, *supra*, 14 Cal.App. 576, 623-632.

In *Ruef* Justice Henshaw signed an order granting a hearing and then left the state and remained outside of the state until after the time within which this court could act upon the petition had expired. Three other justices signed the order after Justice Henshaw's departure from the state. In *Ruef* the court held that because of Justice Henshaw's absence from the state the order granting the hearing was void and the court therefore vacated it. The court relied upon cases holding that no state judge can validly perform any judicial action while he is outside the boundaries of his state and concluded that this rule required them to hold the order granting the hearing invalid even though Justice Henshaw was within the state when he signed the order. The court analogized the case of the absence of Justice Henshaw from the state when the other three signed the order to the case of a justice who might have signed such an order and then died or otherwise ceased to be a member of the court before the other justices had acted. The analogy is not exact since Justice Henshaw was still a member of the court when the order was signed by the other justices. The court treated the signing of the order by the four justices as a single judicial act and so felt compelled to hold that the order was void because Justice Henshaw was out of the state when this single judicial act was completed. The court might as well have concluded that realistically considered the act of Justice Henshaw in signing the order was his only judicial act and that that judicial act was performed while Justice Henshaw was in the State of California. Thus the manner in which the court approached Justice Henshaw's judicial conduct dictated the conclusion of the court, where another approach might as logically have led to the contrary conclusion. The court in *Ruef* found no distinction between Justice Henshaw signing the order while he was outside of the state, and Justice Henshaw signing the order while he was

within the state and then leaving the state before the other justices signed the order. There is, in fact, a substantial difference between the two situations.

Judicial logic should not be carried ruthlessly beyond the point of common sense. It should be the tool and not the master of judicial craftsmanship. The artificiality of the court's reasoning in *Ruef* becomes apparent upon a critical examination. If Justice Henshaw had remained in the State of California but had been absent from the other members of the court and entirely unaware of the fact that three other justices had signed the order it would, under the reasoning of the court in *Ruef*, nonetheless have become a valid order of the court, even though Justice Henshaw's concurrence with the other three would not have been a knowing concurrence at the time that the fourth justice signed the order, but would have derived its only effect from the fact that Justice Henshaw had previously signed the order and had not thereafter chosen to withdraw his signature. The only judicial action taken by Justice Henshaw under the supposed facts would have been his affixing of his signature to the order granting a hearing (unless we indulge in the pointless fiction that a justice can perform a judicial action without knowing that it is being performed). If this would be true had Justice Henshaw remained within the state until after the fourth justice signed the order we cannot agree that Justice Henshaw's leaving the state after affixing his signature to the order should lead to any different result. The critical question would appear to be whether Justice Henshaw was in the state when he signed the order and not whether he was within the state when the fourth signature was subscribed to it. The individual justice's judicial action is the signing of the order and when he takes that action if he is within the limits of the state he has the power to perform that judicial act. ■ We have accordingly concluded that since Justice Schauer signed the order granting a hearing in this case while he was within the State of California the order was effective when signed by three other members of this court and that Justice Schauer's absence from the state when that was done does not affect its validity. Insofar as it is inconsistent with this conclusion the opinion of this court in *People* v. *Ruef, supra,* 14 Cal.App. 576, 623-632, is overruled.

Turning to the merits, in this action the plaintiffs[1] seek

---

[1] Appellant appears both individually and as executor, therefore the plural "plaintiffs" will be used.

to recover damages alleged to have been caused to their mountain property by the closing and occupancy by defendant San Jose Water Works of a public road which furnished access to said property (count I of the fourth amended complaint); and damages to said property by certain alleged tortious acts of defendant and certain alleged conduct of the public health authorities taken to protect the sanitary conditions of a reservoir operated and maintained by defendant below plaintiffs' property into which streams which flow through plaintiffs' property ultimately discharge their waters (sixth amended complaint).

The court sustained a general demurrer to count I of the fourth amended complaint without leave to amend, and special demurrers to count II of said fourth amended complaint with leave to amend. Plaintiffs thereafter filed a fifth and sixth amended complaint based upon the cause of action attempted to be stated in count II of the fourth amended complaint. The court sustained a general demurrer to the sixth amended complaint without leave to amend and judgment was entered dismissing the action, from which this appeal is taken. The two causes of action proceed upon somewhat different theories and must be disposed of separately.

While the general demurrer to the first count of the fourth amended complaint was sustained without leave to amend, the cause remained pending because of the leave granted to amend the second count of this complaint, and no final judgment of dismissal was or could be entered until after the demurrer to the sixth amended complaint had been sustained without leave to amend. The order sustaining the general demurrer to count I of the fourth amended complaint without leave to amend foreclosed plaintiffs from proceeding further upon the cause of action embraced in that count. It seems clear that this order is properly reviewable upon appeal from the judgment subsequently entered under Code of Civil Procedure, section 956.[2]

We granted the hearing in this case to give consideration to the question whether the closing of a county road which (as alleged in the first count of the fourth amended complaint) cut off all access to the plaintiffs' country property over such road would give rise to a cause of action for

---

[2]Code of Civil Procedure, section 956: "Upon an appeal from a judgment the court may review . . . any intermediate . . . order . . . which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party."

damages to such property where the only other access to such property was over another more circuitous road which is so difficult and dangerous that a large portion of the public refuse to use it. We have concluded after a more careful consideration of the pleadings than was possible at the time of our granting the hearing that the pleadings do not properly present this question.

The plaintiffs throughout proceeded on the theory of inverse condemnation, i.e., that the defendant had by occupancy of the road in question for its public use as a part of a reservoir system for supplying water to the public and by the other acts alleged in the pleadings permanently damaged and rendered entirely valueless the property of the plaintiffs by reason of which they sought to recover from defendant the total value of the property. The doctrine of inverse condemnation rests upon the theory that after property has been devoted to a public use by a defendant so that it would seriously interfere with the service furnished by the defendant to the public if such use is discontinued public policy dictates that such use should not be discontinued and the property owner's only relief in such a situation is an action for the value of the property taken and the damages to his remaining property by way of inverse condemnation. (*Hillside Water Co.* v. *City of Los Angeles,* 10 Cal.2d 677, 688 [76 P.2d 681] ; *Peabody* v. *City of Vallejo,* 2 Cal.2d 351, 377-379 [40 P.2d 486].) To make this doctrine applicable, however, the property must in fact have been devoted to a public use by the defendant to the extent that the public interest would suffer by the discontinuance of such use. ''The doctrine of inverse condemnation . . . can be properly applied only where a public use has attached.'' (*Tulare Irr. Dist.* v. *Lindsay-Strathmore Irr. Dist.,* 3 Cal.2d 489, 533 [45 P.2d 972].)

 The first count of the fourth amended complaint fails to allege any facts to show that the road in question has been so devoted to a public use by the defendant that plaintiffs' ordinary remedies are not available to them, or that they would be entitled to proceed against the defendant under the doctrine of inverse condemnation on the theory that a public use has attached to such road so as to entitle plaintiffs to recover permanent damages to their property, which is the only relief that they are seeking in this action. In this respect the complaint alleges :

1. ''That San Jose Water Works, its officers, agents and employees did on or about March 26, 1947, cause armed employees of San Jose Water Works to erect barbwire fences

across said county road at Wright Station, and Call of the Wild, respectively. That said barbwire fences across said county road did stop all ingress and egress and access to said county road, from and to the real property, as above described.'' There is nothing in this allegation to establish that the defendant has devoted the road to a public use within the doctrine of the cited cases or that the ordinary remedies at law and equity would not be available to plaintiffs. Additionally plaintiffs alleged in an earlier supplemental complaint that pursuant to a resolution of the board of supervisors unanimously adopted on June 14, 1949, a copy of which is attached *in haec verba* to the supplemental complaint, ''The County of Santa Clara, its officers, Road Commissioner and employees, did remove the aforesaid barbwire obstructions across said County road and did place new barriers across said County road at Wrights Station and Call of the Wild, respectively, marked, 'Road Closed by Order of the Board of Supervisors.' ''[3]

In subsequent pleadings, including the first count of the fourth amended complaint, the allegation above quoted was omitted without any explanation. ■ The trial court was entitled to consider this allegation, however, in ruling on the demurrer to the first count of the fourth amended complaint under the settled rule that if a verified complaint contains an allegation which renders the complaint vulnerable to demurrer the defect cannot be cured simply by omitting the allegation without explanation in a later pleading. (*Hardy* v. *Admiral Oil Co.*, 56 Cal.2d 836, 840 [16 Cal.Rptr. 894, 366 P.2d 310].) ■ It thus sufficiently appears that whatever the legal effect of the original pleaded erection of barriers across said road in 1947 by defendant may have been, those barriers were removed by order of the board of supervisors in 1949, and the barriers thereafter installed were the responsibility of the board of supervisors and not of the defendant. Whatever rights the maintenance of such later installed barriers may have given plaintiffs obviously must be asserted against the county or its board of supervisors and not against the defendant water company.

[3]The resolution of the board of supervisors, as pleaded, reads: ''On motion of Supervisor McKinnon, seconded by Supervisor Campbell, it is unanimously ordered that the County Surveyor and Road Commissioner be authorized and directed to take the proper steps to remove the barricades placed [*sic*] the Wrights Station Creek Road and that the Surveyor and Road Commissioner be authorized and directed to erect barricades across said road whenever necessary for the salety [*sic*] of the general public.''

616

2. The first count of the fourth amended complaint further alleges that defendants "have used portions of said county road as a flume line." Conceding that the use as a flume line is sufficient to constitute such a devotion to public use as to bring into play the doctrine that inverse condemnation for any damages caused thereby would be plaintiffs' only remedy, there is no allegation as to what portion of the road is occupied by such flume line and particularly no allegation that such flume line does or would interfere with the free passage of traffic over said road. Since the same allegation was contained in earlier pleadings and not amended after demurrer sustained the court was entitled to conclude that the pleading had stated this allegation as strongly as possible in plaintiffs' favor.

3. The general allegation that said county road "is now used in part as a flume line, and as reservoir land, for the exclusive benefit of San Jose Water Works" is subject to the same defect, since it is nowhere pleaded that such uses are of a character to obstruct the free passage of traffic over said road.

The other allegations of the first count of the fourth amended complaint are of acts of trespass and intimidation similar to those hereafter discussed in considering the sixth amended complaint.

One of the theories of the sixth amended complaint is that by constructing its reservoir below plaintiffs' property defendant has brought about a situation whereby the public health authorities have enforced certain sanitary regulations against the use of plaintiffs' property which have prevented plaintiffs from making any beneficial use of it. Insofar as any such regulations may constitute a proper exercise of the police power of the state any damage caused to plaintiffs by their enforcement, under settled principles, is not compensable. If any of such regulations exceed the police power or if the conduct of the public authorities is in any other respect illegal, relief must be sought against the public authorities. Plaintiffs have cited no authority, and we have found none, that would give plaintiffs any right to recover against defendant for the legal or illegal acts of public officials, simply because the defendant's lawful use of its own property has created a situation which the public officials, rightly or wrongly, believe justifies the enforcement of certain sanitary regulations in the use of plaintiffs' property.

The other theory upon which this attempted cause

of action rests is that by threats, intimidation, false arrests and threats of false arrest and other tortious conduct defendant has prevented the plaintiffs from making any beneficial use of their property. Properly pleaded this alleged conduct might support one or several causes of action, but not the only cause of action which plaintiffs have consistently attempted to state, i.e., that by such conduct defendant has permanently taken from plaintiffs all beneficial use of their property for which they are entitled to recover its full value by way of damages.

The only claim of damage alleged is: "That on or about March 1, 1946 said real property was worth the sum of $500,000.00"; and "That plaintiffs have been damaged in the sum of $500,000.00 by reason of the acts and conduct of Defendant." The theory is that by threats and intimidation which have prevented plaintiffs from using their property defendant has in fact permanently confiscated it; but all such acts if tortious and illegal could at most have resulted in the temporary interruption of the beneficial use of the property and not, as alleged by plaintiffs, in its permanent confiscation. There is no allegation of the value of such use or of the amount of damage suffered by plaintiffs from defendant's interference with such use. Having failed after five amendments to state a cause of action on the only theory as to which damages were alleged, and having failed to allege the amount of any damages to which they might properly be entitled on any theory legally open to them, plaintiffs had made it perfectly clear that they were attempting only to state a cause in inverse condemnation for the permanent confiscation of their property. Since they had failed to state a cause of action after repeated amendments and obviously could not state a cause of action on the only theory upon which they were relying, the court did not err in sustaining the demurrer to the sixth amended complaint without leave to amend. (*Ruinello* v. *Murray*, 36 Cal.2d 687, 690 [227 P.2d 251].)

Judgment affirmed.

McComb, J., concurred in the judgment.

Dooling, J. pro tem.,* participated in place of Tobriner, J., who deemed himself disqualified.

---

*Assigned by Chairman of Judicial Council.