[Crim. No. 10447.   Second Dist., Div. One.   July 7, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK RICHARD DARMIENTO et al., Defendants and Appellants.

Luke McKissack for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal by each of the appellants from judgments of conviction of pimping and pandering.

In an information filed in Los Angeles County on January 28, 1964, defendants were charged in count I with pimping in that between November 7, 1963, and December 9, 1963, knowing Magalis Negron to be a prostitute, they lived and derived support and maintenance, in part, from her earnings in her prostitution and did solicit and receive compensation for soliciting for her said prostitution. In count II defendants were charged with pandering in that on November 7, 1963, they procured for Magalis Negron a place as an inmate of a house of prostitution. Defendants pleaded not guilty and in a jury trial were found guilty as charged. A motion for a new trial was denied. In Darmiento's case, proceedings were suspended, he was placed on probation for three years, a part of the terms being that he spend the first six months in the county jail, that he not associate with Magalis Negron, and that he support his dependents. In Del Vecchio's case, proceedings were suspended, she was granted probation for five years, a part of the terms being that she spend the first 90 days in jail, that she was not to associate with Negron or Darmiento, that she obey all laws. This appeal followed from the judgment in each case (orders granting probation).

No useful purpose would be served in setting forth the sordid testimony of how the defendants met Magalis Negron, a 19-year-old Hollywood secretary, how they made arrangements for her to engage in prostitution and how they secured customers for her in such activities, how they took the money she received from such activities and ultimately physically abused her in an effort to cause her to lose a baby. Suffice it to

say that the testimony, if believed, clearly showed that each defendant was guilty of the charges of pimping and pandering. Neither defendant in this appeal makes any contention that the evidence is not sufficient to support the judgment.

At the trial the defendants were represented by William J. Bluestein, an attorney practicing in Los Angeles County. During the selection of the jury, the deputy district attorney requested a conference in chambers. The defendants and their attorney were present. The deputy district attorney informed the court that the prosecuting witness might testify to matters which might be prejudicial to the defendants. He stated that Miss Negron, who was to be a prosecuting witness, might testify that one of the persons with whom she had sexual relations was Bluestein, at the request of, and in the presence of defendants, and that such testimony would be prejudicial to the defendants; that he, the prosecutor, was affording Bluestein the opportunity to have other counsel represent the defendants, and that he wanted the defendants to know about the situation, in effect that they might be better off if they had counsel who had had nothing to do with the prosecuting witness. The judge stated that he would permit Bluestein to consult with his clients to the end that they could determine what they wanted to do considering the possibility of such testimony. The judge made it clear that it was their choice to make, and indicated that if they wanted time, he would grant it. Bluestein immediately replied that he had no desire to withdraw from the case, saying: "I am sure I speak for the defendants in their presence they have no desire to have anybody else represent them but myself." Thereafter the following colloquy occurred:

"THE COURT: You have heard the statement of the District Attorney. Do you feel you still want Mr. Bluestein to represent you in view of the fact the District Attorney has revealed there may or may not be prejudice as far as your case is concerned? Mr. Bluestein apparently doesn't think there would be. Isn't that correct?

"MR. BLUESTEIN: I am not saying that, your Honor. I think it is conceivable there might be prejudice.

"THE COURT: All right.

"MR. BLUESTEIN: That I think it would be conceivable it might be grounds for mistrial if this came out, if the testimony developed as the way counsel stated. I am not conceding either side one way or the other.

"THE COURT: Anyway, you still want to remain as counsel?

362

"MR. BLUESTEIN: Absolutely.

"THE COURT: Do I understand it without taking counsel's word you still want Mr. Bluestein as your attorney in this case?

"DEFENDANT DARMIENTO: Yes.

"THE COURT: Both answer in the affirmative.

"DEFENDANT DEL VECCHIO: Right.

"THE COURT: Both answering in the affirmative. Right?

"That leaves us, then, with the plain case ready to go as far as this Court is concerned, unless you feel you want to in some way bring something to the Court's attention that perhaps I have overlooked.

"MR. DENMARK: I am just wondering, your Honor, if it would be within counsel's province at this particular point to make this determination or perhaps the Court might make this particular determination. I demonstrate my point. Even though counsel says he may be prejudiced, he still wants to represent his clients, his clients say they want Mr. Bluestein. I think if in this case conviction was had, I think perhaps it would be proper ground for appeal on incompetency of counsel remaining in knowing this, conceding as he did on the record there may be prejudice in what the Court is doing.

"MR. BLUESTEIN: I see counsel's point from his point of view.

"MR. DENMARK: I don't know if I am making myself clear.

"THE COURT: Yes.

"MR. DENMARK: He is incompetent for making this selection knowing this particular thing.

"MR. BLUESTEIN: I don't think the election is mine to make. It is the defendants'. They have a right to counsel regardless of how it might develop during the trial.

"MR. DENMARK: I just wondered perhaps if it wouldn't be the better part of discretion, I don't know, if both clients, just to preserve the record, both defendants could speak to another counsel relative to this decision and have the other counsel advise them as a party in interest relative to this discussion as to what their best interest would be and based upon that discussion they could make intelligent selection. I think at this point their decision might be influenced by Mr. Bluestein's decision to go ahead and still represent them on the face of this. Just to preserve the record, perhaps he may have gone too far, sort of like a home remedy, your Honor, but it is sort of a practical situation to obviate any point on appeal relative to this issue. Both defendants have made an intelligent selection

without aid of counsel Mr. Bluestein making this selection or choice.

"Mr. Bluestein: I would say this, your Honor: We have proceeded with the trial, it is started at this point, and for the defendants to be put in the position of having to employ—the only thing that could be said is that could be the Court's order. They would have to employ another attorney or they don't have to employ another attorney. And this would be prejudicial to them in and of itself. I think they have a right to their counsel at the time of trial regardless of whether or not the witness might testify as to counsel's implication with her—with the complaining witness. ;

"The Court: Let me be crystal clear. You both have heard that the complaining witness may testify as to the fact that your counsel participated in these acts. Do you understand that? This may well be prejudicial to your right to a fair trial. Do you still desire without consulting any counsel whatsoever, to employ Mr. Bluestein as your counsel and to proceed with this trial?

"Is your answer, first, yes?

"Defendant Darmiento: Yes.

"The Court: Is your answer yes?

"Defendant Del Vecchio: Yes.

"The Court: All right. I am going to continue with the trial. The fact that this witness may or may not implicate this counsel as far as this Court is concerned at this time does not permit me, standing as it does alone, to relieve Mr. Bluestein as counsel.

". . . I am not going to relieve him as counsel. He feels he wants to remain as counsel. Both of his clients want him to remain as counsel. . . ."

Furthermore, after the judge's ruling as indicated, the court succinctly brought to the attention of Bluestein that his request for an inspection of a book in the possession of the prosecutor, presumably a book which contained a record on how some of the prospective jurors had voted in other cases, was denied. The judge read the pertinent part of *People* v. *Superior Court,* 175 Cal.App.2d 830 [1 Cal.Rptr. 55] to Bluestein.

Magalis Negron was called as the prosecution's first witness. No reference was made in any question by the prosecutor or in any answer by the witness to any question of the prosecutor, to any conduct or misconduct between Bluestein and the witness. On cross-examination appellants' attorney questioned Miss Negron with reference to her prostitution activities and

asked her to describe each date and what had occurred. He asked whom she had seen on each of these occasions and in the sequence of events she testified that one of her dates was Bluestein. The questions put and the answers given are set forth in the footnote.[1]

After hearing additional testimony, the matter was submitted to the jury and guilty verdicts were returned.

Appellants now assert that the evidence in question was prejudicial to them and, in effect, that they therefore received ineffective legal representation which requires reversal.

■ In order for counsel's representation to be ineffective, it must be determined that the trial was reduced to a "farce or a sham." (See *People* v. *Brooks,* 64 Cal.2d 130, 139 [48 Cal.Rptr. 879, 410 P.2d 383], and cases cited therein.) Appellants assert that their attorney was guilty of unethical conduct which resulted in substantial harm to their cause. Fortunately, no case can be cited by appellants, nor has any been discovered, where a similar situation has developed.

---

[1] "Q After this date with Mr. Anders, when was the next time you went out on a date with Yvonne?

"A It was the next night.

"Q Very next night. And whom did you see that night?

"A You.

"Q You saw me?

"A Yes.

"Q Where did you see me?

"A At the house.

"Q You went out on a date with me?

"A No, you came up to the house.

"Q Oh, and did you have an act of sexual intercourse with me for money?

"A Yes, I did.

"Q Did you give me money?

"A No.

"Q Oh. Did you see me give anybody money?

"A No, I didn't. May I explain how it was?

"Q Let us go on this way: I came to your house, is that correct?

"A Yes, you did.

"Q And was this the ninth or tenth man you had seen, is that correct?

"A Yes.

"Q Let us put me down. Now, I came to your house. Was this the location on Sycamore?

"A Yes, it was.

"Q Had you ever met me before this occasion?

"A No, I hadn't.

"Q Did you have any conversation with me relating to the act of sexual intercourse?

"A No, I didn't.

"Q Did we have an act of sexual intercourse?

"A Yes, we did.

"Q Did you know my name?

"A Yes, I did.

"Q Did I give you any money?

"A No, you did not.

No objection was made upon the part of the appellants, or either of them, to any of the testimony, or the representation they received until the matter was raised on appeal. In *People v. Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865], it is stated: "A defendant may complain at any time during the trial that his counsel is not adequately representing him thereby affording the trial court an opportunity to correct the situation, but if a defendant fails to avail himself of this privilege at the trial level, he cannot ordinarily after an adverse judgment, first complain of the matter on appeal. [Citations.]" In the instant case the trial court offered appellants the opportunity to object to representation by Bluestein, but each refused to object to his services; they were offered an opportunity for a continuance to consult with another attorney and they refused that offer; when the evidence was received at the trial they remained silent. They were represented by Bluestein at the hearing on the motion for a new trial and at the sentencing phase of the trial, and according to the comments of the trial judge, Bluestein tried the case

---

"Q  Did you see me give anybody any money?
"A  No, I did not.
"Q  How long after this occurrence did I see you?
"A  The next night.
"Q  Very next night?
"A  Yes.
"Q  Do you recall what time of day or night it was?
"A  It was some time early in the evening.
"Q  And the occasion after we had relations supposedly, when was the next time, ma'am, you saw me?
"A  I don't remember.
"Q  By the way, who arranged this?
"A  Yvonne and Dick.
"Q  They told you this?
"A  Yes. They told me they owed you some money and they wanted me to take care of you.
"Q  They told you—did they tell you what they owed me money for?
"A  No, they did not.
"Q  Did they tell you whether legal work or whatever it was I was supposed to have done for them?
"A  No, they didn't tell me.
"Q  Did you have any knowledge of any legal work or any work otherwise I had done for them at that time?
"A  No, Yvonne said you were just a friend of theirs.
"Q  I was a friend of theirs?
"A  Yes.
"Q  And they owed me money?
"A  Yes.
"Q  Was I supposed to have lent it to them?
"A  I don't know.
"Q  Who was the next person you saw on the date that was arranged by Yvonne or Dick?
"A  I don't remember."

rather well. ▮▮▮ In the light of the ample opportunity afforded to appellants to object prior to the appeal and their failure to do so, they should not now be allowed to complain for the first time in this court.

At the time of the hearing on the motion for a new trial, the appellants contended that the evidence was insufficient to support the verdicts, that the witness (Negron) should not have been believed. The record discloses that Bluestein did not see fit to take the witness stand, be sworn and testify that he had not participated in activities as stated by the prosecuting witness. Bluestein stated to the court in the argument with reference to any prejudice resulting to the defendants because of his representation of them: ''They [the defendants] were aware and the Court well advised them of their right, . . .'' Later, in the same proceeding, the court said: ''Let me make this comment as regards to the last statement of counsel to the effect that the fact that he was involved in itself was prejudicial. In the first place, he, of course, was apprised at great length, as were all defendants, that this might come out in the case. The defendants wanted to continue and so advised. No mention was made of funds.

''In the second place, the information elicited from the so-called victim or complaining witness was only elicited as a result of a question asked by the defense counsel and it was not volunteered either by the witness, was not brought out by the District Attorney. If there was any error at all, and I can see none, it would certainly be invited error. . . .'' Bluestein responded, ''I apologize to the Court if they felt I was putting this up as a claim of prejudicial error. It was not, of course.''

▮▮▮ As stated by the trial judge, any error that may have resulted from the testimony of Negron with reference to acts between herself and Bluestein was due to Bluestein's questioning. It is invited error ''. . . and the rule is well established that an appellant may not complain of error which was invited or provoked by the actions of his own counsel.'' (*People* v. *Hartley,* 197 Cal.App.2d 111, 115 [17 Cal.Rptr. 286].)

The situation presented in *People* v. *Brooks, supra,* 64 Cal. 2d 130, 139 is apropos. The attorney for Brooks at the time of the closing argument urged that ''. . . even if her client was not to be believed, and had lied on the stand, the complaining witness had also lied and was not to be believed.'' The court stated that ''. . . This did not reduce the trial to a 'farce or a sham,' . . .'' and thus would not require reversal. The court also stated, ''In the heat of a trial, defendant's counsel is best able to determine proper tactics in the

light of the jury's apparent reaction to the proceedings. *Except in rare cases an appellate court should not attempt to second-guess trial counsel.* [Citations.] '' (P. 140.)

It is true that on very infrequent instances there may be counsel who so bungle and mismanage a cause that ultimately it may be considered that a client was deprived of the assistance of counsel. This is not such a case. There is in any event a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel. It is the denial of the right with which we should be most concerned.

This court should be extremely hesitant in reversing judgments because of what is claimed to be a mistake of counsel. It is readily apparent that if the test to be applied depended upon the skill with which a defendant was represented, there would never be any finality to a trial. The situation at present in the administration of justice is bad enough without adding another cause for delay.

Furthermore, under the circumstances of this case, the defendants should not now be permitted to put their trial lawyer on trial in this court. This court cannot admeasure the legal capacity of counsel of defendants' own selection. What possible standard can this court use to determine whether the attorney did everything he could have done in the trial, or that what he did was the most effective or the most ineffective way to defend the case? It might have been that Bluestein's strategy was to ridicule the prosecution witness and to create such utter contempt for her that the jury would not believe her testimony. If such was the case—it backfired. There is no charge of lack of good faith of Bluestein upon the part of appellants.

Appellants also contend that the trial judge erred when in effect he did not exercise a greater control over the proceedings. They state that the trial judge should have obtained Bluestein's discontinuance as counsel, and not have allowed the testimony in question into evidence. However, the record reflects, as heretofore indicated, that the trial judge did all that could be required of him. The appellants were advised that the testimony might come in. The judge offered the parties time to consult together or to consult another attorney, but they refused. They were given every opportunity to be relieved of any possible prejudice resulting from the testimony, but chose to proceed. Even in a case where defendant is dissatisfied with legal representation, he does not have an absolute right to discharge his attorney. (*People* v. *Carlyon,* 191 Cal.App.2d 617, 623 [12 Cal.Rptr. 813] ; *People* v. *Gaither,* 173

Cal.App.2d 662, 670-671 [343 P.2d 799].)  ▮  And since "[t]he court cannot force a competent defendant to be represented by an attorney. [Citations.]" *(People v. Mattson,* 51 Cal.2d 777, 788-789 [336 P.2d 937]), it would also appear true that a court cannot force defendants to be deprived of representation by counsel of their choice. There has been no showing by appellants that they suffered any injustice which the trial judge could have prevented. Had the judge exerted pressure upon Bluestein to withdraw or ordered his expulsion, appellants would perhaps now be claiming that it was prejudicial error to refuse them the right to continue with the counsel of their choice.

Appellants also contend that the court should have stricken the evidence upon its own motion. In support thereof appellants rely upon *Dastagir v. Dastagir,* 109 Cal.App.2d 809, 816 [241 P.2d 656], wherein the court stated that the trial court on its own motion should have stricken certain questions and reprimanded counsel for asking them, notwithstanding lack of objection by opposing counsel. In *Dastagir, supra,* the questions were asked with the clear purpose of prejudicing the jury against the defendant. It would appear that the purpose of the questioning in the case at bench was to impeach the witness and build another conflict in this witness' testimony and not to prejudice the jury against the defendants.

▮  Appellants further contend that regardless of where the fault lies, the error requires automatic reversal. There is no merit to this assertion for as the Attorney General has stated in his brief: ". . . A defendant cannot be permitted to deliberately plant the seeds of a reversal into the case, attempt to harvest the fruit of victory from those seeds and then, when the weeds of defeat are the only harvest, ask an appellate court to give them a new trial free from the error they alone created."

At the time the jury selection proceedings commenced, Bluestein requested that he be allowed to inspect a book to which the district attorney referred. The book was alleged to contain a record of prior verdicts rendered on other matters by some of the prospective jurors. The court assumed that the district attorney had a "jury book" in his possession from the evasive answers given to the court's questions. Appellants then made a motion to discharge the jury panel. Thereafter the court denied appellants' request to examine the district attorney's records and the motion to discharge the entire jury panel. Appellants now contend that the court's refusal of their request to inspect the "jury book" was error.  ▮  Under

the rule stated in *People* v. *Superior Court,* 175 Cal.App.2d 830 [1 Cal.Rptr. 55] there was no error in the court's refusal to permit appellants the right to inspect the alleged "jury book." The court therein stated ". . . there is no statutory authority or principle which authorizes the trial court by blanket order, such as was made in the instant case, to compel the district attorney to furnish to defense counsel all the private information he may have respecting jurors." (P. 832.)

*Hamer* v. *United States* (9th Cir. 1958) 259 F.2d 274 does not stand for the proposition that the trial judge must investigate the contents of the book as appellants contend. It is to be noted that the appellants made no request that the court inspect the book, but the request was for appellants' attorney to have the right to inspect the book, which the court properly denied. There was no showing upon the part of the appellants that the use of a jury book would result in unfair advantage to the respondent. As stated in *Hamer, supra,* ". . . The use of 'jury books' showing how members of a jury panel voted on previous juries has long existed in our courts. It has been praised and criticized; attacked and defended. Many an experienced trial lawyer will insist that knowing how a juror votes on one case will not give the slightest indication how he or she would vote on another, even if it is the same kind of case. If the facts differ, it is a different case, and different pressures, feelings, and sympathies come into being. And, of course, facts do differ in each narcotics case; in each tax case; each personal injury case; and each case of any 'type' or 'kind.' " (P. 280.)

There is nothing in the record to indicate that the jurors knew of the existence or purpose of a jury book or that they were or could be influenced by its existence. No request was made that the court attempt to secure this information and we see no merit to appellants' assertion that the court should have done so on its own motion.

The judgments (orders granting probation) are, and each is, affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied July 27, 1966, and appellants' petition for a hearing by the Supreme Court was denied August 31, 1966.