[Crim. No. 18540. First Dist., Div. One. Nov. 2, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN MARTIN CASTRO, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Dennis P. Riordan and Wendy Shane, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KELLY, J.***—Defendant, charged in a grand jury indictment with violating Health and Safety Code section 11352 (transporting, selling and furnishing, or giving away heroin), was convicted by a jury as charged and sentenced to state prison. He now appeals.

### *Statement of Facts*

The case involves a heroin purchase on February 16, 1977, between the defendant and a paid undercover police informer, Steven Ramey. The defense was entrapment.

Ramey, a convicted felon (who spent some twenty years in prison for three felony convictions—burglary in 1956 and 1964 and escape in 1970) began working as a paid undercover police informer as part of a deal to have drug charges against his wife dismissed. As such undercover agent he worked in Salinas, Palm Springs, San Diego and other areas. Because of this experience he was offered similar employment with the Alameda County Sheriff's office in December 1976. Between January and August 1977, Ramey worked on over 100 investigations leading to the indictment of some 60 persons before he was terminated for his own safety.

During his time of service in the Korean War, he acquired the Bronze Star and Combat Badge and received an honorable discharge. He reenlisted and was dishonorably discharged for possession of a concealed weapon and being AWOL. He had been a heroin addict or user on an irregular basis since 1951.

As a paid informer for the Alameda County's Sheriff's office he agreed to provide information to them and to specifically participate in

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

a "buy program." In that undercover capacity he worked with Sergeant Chavarria of the Alameda County Sheriff's office. He was instructed by Chavarria not to use heroin when he was actually participating in "buys" for Sergeant Chavarria.

At a meeting prior to February 16, 1977, between defendant and Ramey, the former approached Ramey and advised him he could buy $10 worth of heroin from one "Dave" who lived at B and Burbank Streets. Based on this encounter, Ramey on February 16, 1977, arranged a buy from defendant. On that day Ramey met with Sergeant Chavarria at the Hayward BART Station. Chavarria made a complete physical search of Ramey and his vehicle but no money or narcotics were found. Chavarria also observed that Ramey was not under the influence of any drug. Chavarria gave Ramey $10 in county funds.

Ramey then drove his own car to the Doggie Diner, a few blocks away, at all times followed and under the surveillance of Chavarria. Chavarria saw Ramey approach the defendant at the Diner and the two men talked for a brief time—not over two minutes. Ramey testified that he asked defendant to get him a $10 bag of heroin and the defendant agreed to take Ramey to "Dave." Ramey and defendant got into Ramey's car with Sergeant Chavarria following in his car and drove some five or six blocks to B and Burbank Streets. While Ramey remained in the car the defendant took the money and approached a house. A third man later identified as Louis Villisano and also known as "Dave" exited the house. Defendant gave Dave the $10 and obtained a red balloon, then returned to the car and gave Ramey the balloon. Ramey and defendant returned to the Doggie Diner in Ramey's car followed by Sergeant Chavarria. Defendant disembarked and Ramey then drove to the same Hayward BART Station where he was again searched by Sergeant Chavarria. Ramey gave Sergeant Chavarria the balloon which contained a substance later tested out to be heroin.

The defendant admitted meeting Ramey at the Doggie Diner and going with him to B and Burbank Streets. He also admitted buying heroin *for* Ramey from Dave at that location. The only aspect of the transaction on which he and Ramey differed concerned the defendant's state of mind. Hence the defense of entrapment.

Admitting he is a heroin addict and that he had secured heroin for Ramey on several prior occasions, Defendant asserted that, in return, Ramey had always given him a "fix" from the purchased heroin.

Defendant's version of the December 16 meeting with Ramey and the purchase of the heroin from Dave was that Ramey was going through withdrawal and pleaded with defendant for 15 to 20 minutes to get him some heroin until defendant relented, whereupon the purchase with Dave was consummated, i.e. the idea of the purchase originated in Ramey's rather than Dave's mind.

Defendant contends that reversible error was committed by the trial court in its (1) failure to give the requested cautionary instruction on the unreliability of a paid informer who was also a drug addict; (2) failure to review *in camera*, as requested, the prosecution's jury book list for the purpose of determining the existence of "rap sheet" data which could be the basis for defendant's challenge for cause on voir dire, in violation of the defendant's right to due process of law and a fair and impartial jury; (3) denial of defendant's motion for disclosure of the paid informer's current address, since the informer was a material witness on the issue of the defendant's guilt, and reliance on hearsay evidence in its ruling; (4) failure to award defendant work-time or "good time" credit of 42 days of his presentence term for the 84 days he spent in presentence custody.

The issues on appeal will be taken up in the order set forth above.

1. *Was the Defendant Entitled to the Submitted Cautionary Instruction?*

Initially, at the trial defense counsel orally requested an instruction that "testimony of a police informer who is a heroin addict should be viewed with caution." Thereafter, counsel submitted a written version of the requested instruction as follows: "The testimony of an informer who provides evidence against the defendant for pay or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest or by prejudice against defendant." The court denied the request.[1]

This instruction is based on the rule developed by the federal courts holding that a defendant is entitled on request to an instruction that the

[1] It should be noted that the written instruction submitted by defense counsel did not include any reference to a police informer who is a heroin addict as was mentioned when defense counsel orally requested the cautionary instruction.

testimony of a paid informer-addict should be viewed with suspicion. (*United States* v. *Kinnard* (D.C. Cir. 1972) 465 F.2d 566; *United States* v. *Gonzalez* (5th Cir. 1974) 491 F.2d 1202.) No California cases apply the federal rule. In light of the standard instruction on the credibility of a witness (CALJIC No. 2.20, given in this case) which informs the jury that a witness' credibility should be judged, inter alia, on the existence or nonexistence of a bias, interest, or other motive, the requested information is not necessary.[2]

Under the given California instructions (Nos. 2.20 and 2.27) the jury was fully alerted to examine and view the informer's testimony in the light of any bias, interest or other motive that may be demonstrated by the evidence.

In support of the contention that the requested instruction should have been given, defendant cites *People* v. *Barnett* (1976) 54 Cal. App.3d 1046 [127 Cal.Rptr. 88], wherein the defendant requested a special instruction to supplement CALJIC No. 2.20 relating to witnesses' credibility. The appellate court held the instruction should have been given since it pinpointed the basis of the defendant's attack on the credibility of the prosecution witness. But the failure to give the instruction was held harmless error. In *Barnett* the issue arose from the fact that the defense claimed the prosecution witness was intoxicated (drug or alcohol) while testifying.[3]

Although the instruction would have focused the jury's attention on the basis for the defendant's attack on Ramey's credibility, we find, as in *Barnett, supra,* any error in refusing the proffered instruction to be harmless. Similarly, under the federal rule, failure to give the instruc-

[2]CALJIC No. 2.27—sufficiency of testimony of one witness should be carefully reviewed, was also given.

[3]The proposed instruction in *Barnett* read: "'In determining the credibility of a witness you may consider...his capacity to hear or see that about which he testified and his ability to recollect or relate to such matters; specifically in this regard, you may consider whether any witness was under the influence of alcohol, drugs or other intoxicants at the time he testified; and if you believe that any witness was under the influence of alcohol, drugs, or other intoxicants at the time of his testimony, you may but are not obliged to disregard or give little weight to his or her testimony insofar as you find that his credibility has been impaired thereby; you may reach that conclusion if you find that as a result of being under the influence of alcohol, drugs, or other intoxicants while testifying, such witness' ability to recollect and relate matters about which he or she testified was impaired.'" (At pp. 1050-1051, fn. 2.)

tion is harmless where the informer's testimony is corroborated. (*United States* v. *Collins* (5th Cir. 1972) 472 F.2d 1017, 1018-1019.)

In the same vein, the court in *United States* v. *Kinnard supra,* 465 F.2d 566, speaks as follows: "[I]n order to save the defendant's rights from 'substantial prejudice,' the trial court should be prepared to caution the jury to weigh with extreme caution the testimony of an addict-informer that *is uncorroborated* in some material respect, because of the possibility of the addict's special interest and motive to fabricate." (465 F.2d at p. 572; italics added.)

In the case at bar Ramey's testimony, concerning the heroin purchase on February 16, was substantially confirmed by the defendant himself. The only area of dispute concerned the issue of entrapment. Ramey's testimony that the defendant immediately agreed to buy heroin was corroborated by Sergeant Chavarria who testified that Ramey and the defendant stood by the Doggie Diner for only a minute or so, not the 15 to 20 minutes claimed by the defendant. Assuming, without deciding, that the defendant was entitled to such an instruction, we do not think the defendant was harmed by the omission. The defendant presented evidence bearing on Ramey's credibility, including his drug use, his life style, his prior convictions, and his frequent practice of "short changing" (a technique of cheating a shop keeper). Defense counsel in his closing argument forcefully detailed the reasons why Ramey's testimony should not be believed. We think the jury's attention was focused on the issue of credibility and it is not at all likely that the jury would have reached a different verdict had the requested instruction been given. (Cal.Const., art. VI, § 13.) The test is based on reasonable probability rather than mere possibilities. (*People* v. *Watson* (1956) 46 Cal.2d 818, 827 [299 P.2d 243] [cert. den. 355 U.S. 846 (2 L.Ed.2d 55, 78 S.Ct. 70)].)

2. *Should the Court Have Examined the District Attorney's Jury Book?*

Before the jury was sworn defense counsel moved for an *in-camera* review of the prosecutor's jury book to determine if it contained any matter which might form the basis for a challenge for cause of any of the prospective jurors. The prosecutor represented that "there is nothing in any jury book that we have which is a basis for challenge for cause." The defendant's motion was denied, as was the defense motion to dismiss for violation of due process.

Thereafter, defense counsel motioned for an *in camera* hearing limiting his request to "rap sheet information." Again the district attorney asserted that the jury book contained no information which would show a basis for disqualification of a juror. The court denied defendant's motion.[4]

California case law has consistently found no merit in the contention that a defendant is entitled to inspect the contents of a district attorney's jury book. (*People* v. *Brawley* (1969) 1 Cal.3d 277, 293-294 [82 Cal.Rptr. 161, 461 P.2d 361] [cert. den. 400 U.S. 993 (27 L.Ed.2d 441, 91 S.Ct. 462)]; *People* v. *Darmiento* (1966) 243 Cal.App.2d 358, 368-369 [52 Cal.Rptr. 428] [cert. den. 386 U.S. 1010 (18 L.Ed.2d 438, 87 S.Ct. 1353)]; *People* v. *Superior Court* (1959) 175 Cal.App.2d 830 [1 Cal.Rptr. 55, 78 A.L.R.2d 306]; *People* v. *Ruef* (1910) 14 Cal.App. 576, 595-596 [114 P. 48, 54]; see generally Annot., 86 A.L.R.3d 571 [overruled on other grounds. *Cothran* v. *San Jose Water Works* (1962) 58 Cal.2d 608, 612 (25 Cal.Rptr. 569, 375 P.2d 449)].) In *Brawley, supra,* as in the case at bar, the district attorney advised the court that his records did not contain any matters which would furnish the basis for a challenge for cause. The denial for inspection by the court was held not to be error.

The defendant attempts to distinguish the case at bar from the precedent cases by claiming that the defendant did not request direct disclosure but rather requested that the court examine the contents of the district attorney's book.[5] The distinction does not hold up. Obviously, the purpose of the proposed court review of the jury book was to determine whether the book contained any information that ought to be disclosed to the defense. The use by the prosecutor of a jury list does not result in the deprivation of a fair trial. (*People* v. *Airheart* (1968) 262 Cal.App.2d 673, 679 [68 Cal.Rptr. 857].) The defendant makes no claim that he was precluded from questioning the jurors on voir dire. It would appear therefore that no harm resulted from the nondisclosure.

[4]Defendant sought a writ of prohibition/mandate from this court to review this ruling, but the petition was denied summarily by Division Four of this court. (1 Civ. 44109.)

[5]Defendant relies on dictum in *Hamer* v. *United States* (9th Cir. 1958) 259 F.2d 274, 281: "We think that it is up to the individual judge to see that neither attorney has an unfair advantage over the other, whether by use of jury lists or jury books, or any other knowledge or information that exists with respect to a juror's previous action." The California Supreme Court declined to follow this dictum, finding that "*Hamer* did not deal with the question whether the defendant had a right to inspect the book." (*People* v. *Brawley, supra,* 1 Cal.3d at p. 294.)

3. *Was the Defendant Entitled to Learn Ramey's Current Address?*

Because Ramey was a material witness, the defendant—in the middle of the trial—sought to get his current address, asserting that this information was necessary to give the defense an opportunity to check out Ramey's reputation in the community for honesty and integrity. The district attorney strongly opposed the request and at an *in camera* hearing the court heard testimony concerning various threats Ramey had received upon his life stemming from his undercover work, including being shot at and being the subject of a "hit" contract. The trial court found that disclosure would result in a real danger to the witness which outweighed the materiality of the evidence sought and so denied the request. Defendant now contends that this ruling rendered his trial unfair and denied him his right to confrontation and cross-examination. Other than the nondisclosure of his current address, Ramey was otherwise fully available and subjected to intensive cross-examination.

In support of his request for disclosure defendant cites *Smith* v. *Illinois* (1968) 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748], and *Alford* v. *United States* (1931) 282 U.S. 687, 693 [75 L.Ed. 624, 628, 51 S.Ct. 218], to the effect that the denial of his right to cross-examine a testifying informer concerning his name and address constitutes a denial of due process when the credibility of the informer witness is an issue. In the *Smith* case, however there was no suggestion of danger to the life of the informer. And in their concurring opinions both Justices White and Marshall noted that under the proper circumstances, where the disclosure would endanger the witness, the court has discretion to keep the information undisclosed.

Similarly, in *United States* v. *Palermo* (7th Cir. 1969) 410 F.2d 468, 472 the court held that a witness' address or place of employment need not be revealed if there is a showing of actual threats to the witness.[6]

[6]Defendant argues that the evidence presented at the *in camera* hearing provided no justification for suppression of Ramey's address since much of the evidence of threats was hearsay. This argument is rejected. The testimony of Ramey and the police officers concerning various threats against Ramey's life was not admitted for the truth of the matter stated, but only to show that threats had been made. The testimony was not hearsay. (See Witkin, Cal. Evidence (2d ed. 1966) The Hearsay Rule, §§ 463, 465, pp. 425-427.) It should also be pointed out that some of the testimony at the *in camera* hearing, not objected to by defense counsel, was sufficient to support the court's ruling, e.g., testimony of Sergeant Chavarria and Ramey as to shots fired at his car; defendant's own threats to Ramey; the Ocean Beach attempt on Ramey's life; and Chief

Recent California cases have considered and discussed the matter. In *People* v. *Brandow* (1970) 12 Cal.App.3d 749 [90 Cal.Rptr. 891], the court held that the defendant was denied a fair hearing when the prosecuting witness' true name was not revealed. In reversing Brandow's conviction of pandering, the appellate court held the trial court had erred in sustaining an objection to a question concerning the prosecuting witness' true name. The two principal witnesses to the events involved in the prosecution were the prosecution witnesses and the defendant. The tape-recorded conversations between these two were vague and subject to various interpretations. Under the circumstances the credibility of the two opposing witnesses bore importantly on the issue of the defendant's guilt. Therefore, the identity of the prosecuting witness was an essential element in the protection of the defendant's right to a fair trial.

And in *People* v. *Mascarenas* (1971) 21 Cal.App.3d 660 [98 Cal.Rptr. 728], the court reversed the defendant's conviction where the address of the witness (and police agent) was withheld. "It was the prosecution's burden to establish that the evidence of contraband offered by it against appellant had not been tampered with or altered. (*People* v. *Riser,* 47 Cal.2d 566, 580 [305 P.2d 1].) Eric had stated that he kept that evidence in a jacket pocket in his home for periods up to five days before he delivered it to the police. When the court sustained the objection to the question seeking Eric's address, it precluded the defense from exploring the possibility of facts bearing upon the security of the real evidence vital to the conviction or innocence of appellant. The evidence barred by the court is equal in significance to that describing the function of an evidence locker at a police station. The evidence of Eric's address was also relevant as it might permit the development of facts which would bear upon his community reputation or tend to show bias. (*Alford* v. *United States* 282 U.S. 687 [75 L.Ed. 624, 51 S.Ct. 218].)" (*Id.* pp. 666-667.)

The reversal of conviction in the *Mascarenas* case must be examined and viewed in the light of the particular facts of that case. The appellate court held that the evidence of harm to the minor witness, Eric, was not sufficient.[7]

---

Baugh's testimony as to information he received through police agencies of threat to kill Ramey by hand grenade.

[7]With respect to the possibility of harm to the witness, Eric, the appellate court stated "It is at most one that a 61-year-old woman will engage in oral expression which will embarrass Eric by accusing him of making an unfounded criminal charge." (*People* v. *Mascarenas, supra,* 21 Cal.App.3d at p. 667.)

More recent cases, however, have not found the witness' address to be essential. In *People* v. *Patejdl* (1973) 35 Cal.App.3d 936 [111 Cal.Rptr. 191], the defendant was charged with selling drugs, and the main witness was an informer/police agent. The court affirmed the conviction, despite the fact that the witness' address had been suppressed, where there was no real conflict in the testimony: "As we have indicated, appellant's defense was entrapment and lack of knowledge that the substance was not a narcotic. We have carefully reviewed the record and, with one exception, there is no conflict of substance between the testimony of Agent Webb and that of appellant bearing upon the transaction or these defenses. They agree that Webb approached her and asked her for some 'dope' and she did not approach him. They agree that he was the moving force in the transaction. She testified that she thought the pills were a narcotic. The one exception is Webb's testimony that during the transaction he and appellant discussed the effects of mescaline and appellant stated that she had 'cut' the capsules herself seven parts to one. Although appellant denied such a discussion this testimony, which was generally supported by the officers who monitored the conversation, tends to support rather than defeat appellant's defense of lack of knowledge that the pills were not narcotic. . . where, as in the case at bench, there is no substantial conflict between the testimony of the defendant and that of the informant on the issues determinative of guilt, logic and reason would be ill served by requiring disclosure of the address since the defendant's need to impeach the informant has been diminished, if not eliminated, and there is no possibility that impeachment would have an effect on the outcome of the trial. It is manifest that in such circumstance the defendant has not been deprived of his right to confront or to cross-examine in any meaningful way of a fair trial." (*Id.* at pp. 941, 943.)

The case most analogous to the present one is *People* v. *Mardian* (1975) 47 Cal.App.3d 16 [121 Cal.Rptr. 269]. There the defendant was charged with possession of controlled substances for sale; his request for the current address of a witness was refused. On appeal the court found no denial of the right to confront witnesses. "While the Supreme Court has held that prejudice may result when a defendant is forbidden from asking a witness his current address (*Smith* v. *Illinois,* 390 U.S. 129 [19 L.Ed.2d 956, 88 S.Ct. 748]; *Alford* v. *United States,* 282 U.S. 687 [75 L.Ed. 624, 51 S. Ct. 218]) prejudice does not always or necessarily result. In *Alford* the court reasoned that '[p]rejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which

the jury cannot fairly appraise them.' (P. 693 [75 L.Ed. p. 628].) [¶] Thus, the Sixth Amendment requires, at a minimum, that a prosecution witness' testimony be placed in proper perspective, and to the extent that a witness' address may aid in properly placing this testimony, it is a constitutionally protected subject of cross-examination—but the Sixth Amendment does not accord a defendant a right to demand to know the address of each and every prosecution witness. (*United States* v. *McKinley*, 493 F.2d 547, 550-551.) And federal courts have held that denial of defense inquiry into a witness' address is not error where defense counsel has already clearly placed that witness 'in his proper setting.' (*United States* v. *Alston*, 460 F.2d 48, 52, cert. den., 409 U.S. 871 [34 L.Ed.2d 122, 93 S.Ct. 200]; *United States* v. *Daddano*, 432 F.2d 1119, 1128, cert. den., 402 U.S. 905 [28 L.Ed.2d 645, 91 S.Ct. 1366]; see also *United States* v. *Penick,* 496 F.2d 1105, 1108, cert. den., 419 U.S. 897 [42 L.Ed.2d 141, 95 S.Ct. 177].) [¶] In the case at hand, defense counsel placed Kenneth Donahue in his proper setting without result to inquiry regarding his current address: on cross-examination counsel established that the witness had been granted immunity; used drugs; was a convicted felon; had sold narcotics; possessed an illegal weapon; and was working as a police informer. Such information gave the jury sufficient environmental background regarding this witness to accurately weigh and assess his testimony." (*Id.*, pp. 40-41; see generally Annot., 85 A.L.R.3d 541.)

A similar situation is presented here. Evidence was elicited both on direct and on cross-examination that Ramey was a drug addict and a convicted felon, that he worked as a paid police informer and that he used his money to buy heroin. Moreover, defendant was able to produce three witnesses who testified concerning Ramey's drug use and lifestyle. From this record we conclude that defendant was able to produce sufficient environmental background to allow the jury to weigh and assess the testimony of Ramey even without his address.

Defendant emphasizes that disclosure of Ramey's address would have permitted defendant to determine Ramey's reputation in the community and thus introduce evidence to impeach Ramey's credibility. Yet, defendant was able to cast doubt on Ramey's credibility even without this information. Aside from evidence of Ramey's prior convictions, drug use, and work as a police informer, defendant was able to elicit information concerning Ramey's frequent practice of "short changing." Certainly this evidence bore directly on Ramey's honesty and integrity and placed the witness "in his proper setting." At this point the lan-

guage of the court in *People* v. *Mardian, supra,* becomes pertinent. "...denial of defense inquiry into a witness' address is not error where defense counsel has already clearly placed that witness 'in his proper setting.' [Citations.]" (47 Cal.App.3d 16, at p. 40.)

Appellant contends that under Penal Code sections 4019 and 2900.5 he is entitled to additional credit for good time/work time while in custody before conviction and sentence to state prison. Similar issues are pending before the Supreme Court in *People* v. *Sage,* Crim. 20997, *People* v. *Brown,* Crim. 20998, and *In re Davis,* Crim. 20999, hearings granted May 30, 1979. ■ Because the Supreme Court will ultimately decide the question, we summarily hold that on its face Penal Code section 4019 does not apply to presentence custody of persons convicted of a felony and sentenced to state prison; however, constitutional equal protection of the law principles require that appellant be given credit for good time/work time, if any, as of July 1, 1977, pursuant to section 4019.

The judgment of conviction is affirmed and the cause remanded to the superior court for determination of the amount of good time/work time credit to which appellant may be entitled, if any, under Penal Code section 4019, as of July 1, 1977. The superior court is further directed to prepare a new abstract of judgment and to transmit it to all appropriate authorities.

Judgment affirmed.

Elkington, Acting P. J., concurred.

NEWSOM, J.—I concur in the majority's opinion, but feel compelled to add that the manipulation of an addict-informer to effect $10 accommodation purchases from fellow "junkies," is an even more unwholesome enterprise than the crime it attempts to suppress.

Appellant's petitions for a hearing by the Supreme Court were denied January 3, 1980.