[Crim. No. 10827. Second Dist., Div. Three. Jan. 13, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ANN WILSON, Defendant and Appellant.

Erling J. Hovden, Public Defender, Richard W. Erskine, James L. McCormick, John M. Moore and Kathryn J. McDonald, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

DRUCKER, J. pro tem.*—The defendant appeals from an order denying her motion for a new trial, following a conviction of two counts of violation of section 11501, Health and Safety Code. She was committed for narcotic addiction. (Pen. Code, § 1237, subd. 2.) The main contentions urged by defendant are: That she was denied her constitutional rights to a speedy trial and due process of law by reason of a deliberate delay in the presentation of evidence to the grand jury; that she was denied a fair trial when the prosecution failed to make the participant-informant, Samuel Kinsey, available to the defendant for pretrial interview, or possible use as a witness; that there was a negligent suppression of evidence; and that a duty devolved upon the prosecution to present all eyewitnesses to a transaction.

Extensive pretrial discovery proceedings were conducted before several judges, in which the defendant together with numerous other defendants facing narcotics charges, sought, in common cause, to learn the whereabouts of the participant-informant. Testimony was elicited from the undercover officer, narcotic officers, supervising police officers engaged in the narcotic buy program for the Los Angeles Police Department, the informer's mother, brother, and girl friend.

The last of the discovery hearings involving the defendant was heard before Judge Lawler. The transcripts of prior discovery proceedings in regard to Kinsey were received in evidence. The evidence showed that in January 1964 Kinsey, a narcotic user, had been arrested by narcotic officers. He told the officers that he knew numerous people involved in narcotics and that he would be able to introduce an undercover officer to narcotic peddlers. He was then introduced to officers responsible for the ''buy'' program. Kinsey was questioned and then advised as to the police department's policy in regard to informants summarized as follows: The informant comes to the police freely and voluntarily. He is interrogated as to the names of narcotic peddlers he knows. The validity of his information is checked with the police records. The police then explain their ''buy'' program. The informer is told that it is a strictly business proposition, that he is free to terminate his association with the police any time he wants. He is told of the dangers that beset informers; that some have been killed or severely injured; that the program will last three to four months; that they will not require his testimony as far

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

as the prosecution is concerned but that the defense will probably want him to testify, and if and when he is called by the defense he need only tell the truth. He is told in effect that the only way the police could operate in the field of narcotic enforcement is through narcotic addicts who know who the peddlers are. He is then told to go home and think it over, and if after doing so, he is still interested, to come back and see them.

Kinsey was hired as an informant to work with Undercover Officer Williams. The officer was instructed to work with the informant on a business-like basis and not build a personal relationship with him. A meeting place was arranged for Kinsey and Officer Williams. They met about the first part of February and saw each other, and worked together, almost every day thereafter. Meetings were arranged from one day to the next, and they always met on the street. The officer did not know anything about Kinsey or where he lived, or where he could be reached. Together, they participated in in excess of 200 undercover operations. Payments to Kinsey varied from $2 to $15 per day. During the period of time Kinsey served as an informer, he received approximately $2,500.

In the latter part of April or 1st of May, the police sought and obtained through the district attorney's office, a hearing before the grand jury on May 25, 1964. About the middle of May, Officer Williams, pursuant to instructions of his superior, brought Kinsey into the police administration building. Kinsey was informed that his services would no longer be needed with the police department; that in a short period of time they would be making an attempt to apprehend and prosecute people that Officer Williams had been instrumental in securing buys from.

The police, thereafter, did not see Kinsey or know of his whereabouts, except an officer who saw Kinsey in Lincoln Heights Jail May 20 or 21, 1964. He was in custody on a misdemeanor offense for which he served five days. The officer did not intercede in behalf of Kinsey.

In the latter part of May 1964 Kinsey told his girl friend that he was leaving town and going to New York. "He said he felt like it was going to put everybody in jail."

The grand jury indictment of the defendant was filed May 29, 1964. At the same time numerous indictments were filed as to other persons. The arrests, including the defendant's soon followed. Kinsey was nowhere to be found. The police did not advise Kinsey to leave town, nor did they give him

any money to enable him to do so. The police told Kinsey that they would not need him as a witness. They did not hide Kinsey, nor did they advise him not to be available as a witness. The police did not tell Kinsey that he would be a material witness, nor did they tell him to remain in Los Angeles. They made no effort to detain Kinsey, nor do they know of his present whereabouts. The police did not suggest to Kinsey that his life would be in jeopardy and that he ought to do something to protect himself. It was not the policy of the police to put informants in protective custody. Unless the informant contacted the police and said he was afraid for his life they would not take any affirmative steps to protect him.

The police made available all of the information they had in their files concerning Kinsey, such as his physical description, his nickname, his photograph, all information in the police file, his mother's address, and other places where Kinsey was known to have stayed.

Kinsey's mother and brother did not know where he could be located, nor had they received any communication from him, or about him. Even during the time Kinsey was in Los Angeles his brother had no way of contacting him. They only saw him when he came to visit his mother.

In connection with the discovery proceedings Judge Lawler found as follows: ''The Court wants the record to show that in reading these transcripts that were offered in support of the motion the Court finds that the Police Department and the People have disclosed all of the information that was available to them that might be of assistance in locating the informant Kinsey. The Court found no evidence whatsoever that the police were concealing the informant nor have they done anything to urge him to conceal himself. There was no evidence that the police delayed the prosecution in this case for the purpose of allowing the informant to conceal himself; that the purpose of the delay was to get the maximum use out of the undercover agent as well as the informant.''

The defendant's motion requiring the People to produce the informant or in the alternative to dismiss the indictment was denied. The motion to dismiss the indictment on the ground that the defendant was denied her constitutional right to a speedy trial was denied.

The case of the defendant initially set for June 29, 1964, finally came to trial on December 7, 1964, after numerous

continuances were granted at the request of the defendant. At the outset of the trial, the motion to dismiss the indictment was renewed by the defendant. After testimony was taken, the said motion was denied, and the case proceeded to trial. The evidence showed that the undercover officer accompanied by Kinsey made contact with the defendant on two occasions, in each of which the defendant sold and furnished narcotics in violation of section 11501, Health and Safety Code.

The assertion by the defendant that she was denied her constitutional rights to a speedy trial, is not sustainable under the facts and circumstances of the instant case. The record shows that the police, in their attempt to combat and suppress the illegal trafficking in narcotics, engaged in a ''buy program'' in which they employed an informer together with an undercover officer, to contact peddlers of narcotics so that evidence may be obtained for possible prosecution. Between the first part of February and the middle of May 1964 over 200 contacts were made jointly by the officer and informer. About the latter part of April or first of May the police sought, through the office of the district attorney, a date upon which they could submit to the grand jury the evidence thus obtained. The contacts with the defendant as part of the ''buy program'' were made February 18th and 21st. A hearing was set before the Grand Jury on May 25th, an indictment was returned by the Grand Jury on May 28th. An arrest of the defendant soon followed. She was arraigned on the charges set forth in the indictment on June 8, 1964. Upon her plea of not guilty the case was set for trial on June 29, 1964. Numerous continuances were granted at the request of the defendant. She was thus afforded her constitutional right to a speedy trial in accordance with the prevailing authority in this state.

Article I, section 13 of the state Constitution provides: ''In criminal prosecutions, in any court whatever, the party accused shall have the right to a speedy and public trial.'' This section is self-executing. It reflects the letter and spirit of the United States Constitution, Amendment VI, to the same effect: ''In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. . . .'' (*Harris* v. *Municipal Court,* 209 Cal. 55 [285 P. 699].) The basic policy underlying the constitutional guarantees of a speedy trial is to protect the accused from having criminal

charges pending against him an undue length of time. (*People v. Godlewski*, 22 Cal.2d 677, 682 [140 P.2d 381].) ■ It is well established that the right to a speedy trial does not arise until after a prosecution is instituted against the accused, either under the state Constitution (*People v. Jordan*, 45 Cal.2d 697, 708 [290 P.2d 484]), or under the federal Constitution (*Harlow v. United States*, 301 F.2d 361, 366). ■ As stated in *People v. Aguirre*, 181 Cal.App.2d 577 at p. 579 [5 Cal.Rptr. 477] : ''There is no requirement that a defendant be indicted or arrested at any particular time between the commission of a crime and the expiration of the time allowed by the statute of limitations as to that particular crime.''

Defendant contends that she was denied a fair trial in violation of her right to due process of law, because the unavailability of the participant-informer was due to a deliberate delay and contrivance by the police in presenting the evidence before the Grand Jury. In support of this position she relies on *People v. Kiihoa*, 53 Cal.2d 748 [3 Cal. Rptr. 1, 349 P.2d 673]. In *People v. Castedy*, 194 Cal.App.2d 763 at page 768 [15 Cal.Rptr. 413], the court, in considering a similar contention under similar circumstances as here, stated as follows : ''In *People v. Kiihoa, supra,* our Supreme Court indicated that the deliberate delay of an arrest after the informer had rendered himself immune from the process of the court to obtain his presence at the trial will manifest an intent to avoid the very purpose of the disclosure rule, and concluded that under the facts of the case, the police admission that the arrest was postponed for the express purpose of avoiding the adduction of the informant's testimony, the circumstances surrounding the prosecution affected and militated against the defendant's right to a fair and impartial trial. The court, however, specifically did not reach the question of whether the unavailability of a material witness would necessarily result in a denial of due process in every case.''

The record supports the finding of the judge in the discovery proceedings that there was no contrived or deliberate delay in presenting the evidence before the Grand Jury. The evidence shows that the police did not encourage, or urge, the informer to leave this jurisdiction, nor did they conceal his whereabouts. They had no control over the informer to the extent of compelling him to remain in any particular place. It requires no urging or admonition from the police, for the

informer to take all necessary precautions to avoid physical harm to himself by reason of the role he assumed. In the absence of specific testimony that the police encouraged the informer to disappear, the courts cannot infer improper motives or activities on the part of the officers, but must presume that the officers regularly and lawfully performed their duties. (*People* v. *Sauceda,* 199 Cal.App.2d 47, 56 [18 Cal.Rptr. 452].)

 It is not improbable that under certain circumstances an accused may be deprived of due process of law, if the lapse of time between the alleged commission of the offense and the filing of the accusation makes it difficult or impossible for the accused to prepare his defense. (See footnote in *Nickens* v. *United States,* 323 F.2d 808, 810 [116 App.D.C. 338]; *Justice Overdue-Speedy Trial for the Potential Defendant,* 5 Stan.L.Rev. 95 (1952).) Time, only, will not suffice as the sole basis for the determination of this issue, but time, together with the surrounding circumstances, avoids an arbitrary standard and yet effectively preserves the safeguards created by the Constitution. (*People* v. *Romero,* 13 Cal.App. 2d 667 [57 P.2d 557].)

The question is one of balancing the public interest and the rights of the defendant. Delays in arrest have been sanctioned in order to avoid alerting other potential offenders as long as the delay is not the result of an unlawful purpose and does not result in a deprivation of due process. (*People* v. *Castedy, supra,* at page 769.) In *Kiihoa, supra,* at pp. 753-754, the Supreme Court stated: "We are not unmindful of the ever increasing burden on law enforcement agencies in their continuing endeavor to stamp out the illicit and vicious narcotic traffic. . . . They must be allowed a reasonable rein in order to adequately protect the public interest."

 Effectiveness, in suppressing the flow of narcotics within this state requires a procedure for the enforcement of the narcotic laws, different from most other crimes. To a large extent, it becomes necessary for the police to engage informers in order to ferret out the peddlers of narcotics. The delay, in making arrests, is for the purpose of more efficient law enforcement. Under the circumstances in the instant case, it cannot be said that there was an undue delay in making the arrest, or that the delay was oppressive, or that the defendant was deprived of the due process of the law.

The defendant asserts that she was not only entitled to the disclosure of the informer's name and his whereabouts, but, also, that the prosecutor should be required to produce him or show that a reasonable effort was made to locate him; and, further, that the prosecution has a duty to present all eyewitnesses at the trial. ██ The defendant was afforded the police file and all the information within the knowledge of the police concerning the informers. The prosecution met the requirements for disclosure. (*People* v. *Williams,* 51 Cal.2d 355 [333 P.2d 19].)

As stated in *People* v. *Alexander,* 168 Cal.App.2d 753, 754, 755 [336 P.2d 565] : ''Having received what appears to be all the information possessed by the prosecutor concerning Thomas, and having been afforded two weeks' time to locate him, appellant asserts a right to compel the prosecutor to locate and produce the witness for testimonial purposes. No cases are cited in support of this proposition, we know of none and apprehend that none can be found. Such a rule would be an unreasonable extension of the informer doctrine and we hold that it does not and should not exist. [Citations.]'' ██ Neither is the prosecution required to call any particular witness, nor to introduce all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Kiihoa, supra,* 53 Cal. App.2d 748, 752.)

The defendant was accorded a fair trial. There was no denial of her constitutional rights. The order denying the motion for a new trial is affirmed.

Shinn, P. J., and Kaus, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 9, 1966.