976

THE PEOPLE, Plaintiff and Respondent, v. ROBERT
FLORES, Defendant and Appellant.

Robert Flores, in pro. per., and Robert A. Doyle, under
appointment by the Court of Appeal, for Defendant and
Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and Lawrence E. Mindell, Deputy
Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of convic-
tion of selling heroin.

In an information filed in Los Angeles on November 26,
1965, defendant was charged in count I with selling heroin on

August 5, 1965, and in count II with a similar offense on August 24, 1965. It was further charged that defendant had been convicted three times of felonies; once in February 1957, for the crime of burglary; once in October 1960, for a violation of section 487, subdivision 3, Penal Code, (burglary) and once for violation of section 11501, Health and Safety Code, in September 1960. Defendant pleaded not guilty and admitted the prior convictions. In a jury trial defendant was found guilty as charged. Defendant was sentenced to the state prison, the terms to run concurrently. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: On Thursday, August 5, 1965, at about 1:55 p.m., Officer Limas, an undercover narcotics police officer of the Los Angeles Police Department, unshaven and with long hair, and wearing old clothes, made his way to the area of a large market in the 300 block on South Broadway, Los Angeles. Officer Limas was accompanied by two men, one a person named Joe whom he had met in the market area that day. Officer Limas had first met Joe, a user of narcotics, on July 19, 1965, at the narcotics division of a police building. Sergeant Barber had introduced Joe to Officer Limas as "Joe," however Officer Limas had heard the person referred to as "Crazy Joe" and had learned that his name might be Carlos Morales. Officer Limas did not know the true name, although he had inquired, and he did not know where Joe resided. Joe was a male Mexican, about 45 years of age, who was 5 feet 10 inches in height, weighed about 165 pounds, had black eyes and did not wear glasses. Joe was being paid for his services to the police.

The second man with Officer Limas on August 5, 1965, was not known to the officer and will be referred to herein as "John Doe." Apparently Officer Limas met John Doe for the first time near the corner of Third and Hill Streets in Los Angeles. Officer Limas believed that Joe was acquainted with John Doe although Joe never introduced Officer Limas to John Doe. John Doe walked around with Officer Limas and Joe. John Doe was about 5 feet 10 inches in height, weighed about 175 pounds, was dressed in a brown suit, and wore tinted glasses. Officer Limas, Joe and John Doe went to the market and met defendant at a hot dog stand where he was drinking beer. Officer Limas had never seen defendant before. Defendant was a male Mexican with a tattoo of a skunk on his left forearm. Joe approached defendant and talked with him. Joe returned to Officer Limas and told him in effect that

defendant had some heroin for sale and that Officer Limas should give him, Joe, the money. Officer Limas started to give the money to Joe and defendant remarked, "I don't know this guy" and told him to wait. Joe told defendant in Spanish that Officer Limas was all right; that he was a regular buyer. The money was exchanged, and defendant took a yellow balloon containing heroin out of his mouth and handed it to John Doe, who, in turn, handed it to Joe asking Officer Limas at the time whether he was going to give him, John Doe, some of the heroin. Officer Limas answered in the negative.

Later on in the day Officer Limas asked other police officers at the police building if they knew of a light-complexioned person who appeared to be a Caucasian and Officer Limas was told that the man went by the name of "Wedo Hot Dog." Limas looked through some police files which had to do with the area of the transaction and found in a file of narcotics addicts a picture of defendant, with the name "Wedo Hot Dog."

Officer Limas next saw defendant at the same hot dog stand on August 24, 1965. Officer Limas was accompanied by Joe whom he had met in a nearby area. Joe and defendant talked in Spanish. Joe then told Officer Limas to put out his money. Officer Limas told defendant to give him a "half" and Officer Limas delivered the money. Defendant took a red balloon containing heroin from his mouth and handed it to Joe who then handed it to Officer Limas. Defendant was arrested November 3, 1965, apparently after Joe's usefulness was exhausted as an informer and buyer.

Defendant testified that his nickname was "Wedo Hot Dog." He had a skunk tattoo on his arm.

Appellant now asserts that it was error not to disclose the names of the two informers, Joe and John Doe; further, it was error to impeach him by showing that he previously had been convicted of felonies.

■ As to the informers, Joe and John Doe, it is evident from the record that the police gave to appellant all of the information they had with reference to each of them. There is no evidence to the effect that the police, or anyone else in law enforcement, had encouraged either Joe or John Doe to disappear. Courts cannot infer improper motives or activities upon the part of law officers, but must presume that the officers regularly and lawfully performed their duties. (*People* v. *Wilson,* 239 Cal.App.2d 358, 365 [48 Cal.Rptr. 638].)

■ It is not required in law that all witnesses who have any knowledge of the crime in question must be produced in court or called to testify. (*People* v. *Ruiz,* 228 Cal.App.2d 703, 706 [39 Cal.Rptr. 641]; *People* v. *Smith,* 174 Cal.App.2d 129, 134 [344 P.2d 435]; *People* v. *Hunt,* 221 Cal.App.2d 224, 226-227 [34 Cal.Rptr. 421]; *People* v. *Ortiz,* 195 Cal.App.2d 112, 117 [15 Cal.Rptr. 398].)

Appellant relies heavily upon what is stated in *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], but the facts there are in small measure similar to the facts of this case. The prosecution relies heavily upon *People* v. *Davis,* 238 Cal.App.2d 482 [8 Cal.Rptr. 111]. The facts in this case and *Davis* are very similar.

In this case insofar as John Doe is concerned, there is no evidence which would indicate that he had the slightest idea about the relationship of Joe and Officer Limas. In fact it appears that he was along hoping to secure a share of a purchase of heroin for his own use.

■ Appellant testified in his own behalf and properly so the prosecutor asked him if he previously had been convicted of a felony. Appellant replied that he had been convicted of grand theft auto, selling heroin and burglary. In the argument to the jury the prosecutor said to the jury:

"You cannot consider these prior convictions, the judge will tell you, in reaching your determination as to whether or not this defendant is guilty of the crime charged.

"But you can use these prior convictions in determining whether or not the witness was a credible witness, worthy of belief."

The judge properly instructed the jury on the use of such evidence.

The use of the priors for impeachment purposes was perfectly proper. See *People* v. *Pike,* 58 Cal.2d 70, 93 [22 Cal. Rptr. 664, 372 P.2d 656]; *People* v. *Jackson,* 53 Cal.2d 89, 92-93 [346 P.2d 389]; *People* v. *Adamson,* 27 Cal.2d 478, 494 [165 P.2d 3]; *People* v. *Beverly,* 200 Cal.App.2d 119, 124 [19 Cal.Rptr. 67].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied September 20, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1967.