[Crim. No. 1368. Fifth Dist. May 18, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
KENNETH GAYLON VANDERBURG, Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Arnold O. Overoye and Robert D. Marshall, Deputy Attorneys General, for Plaintiff and Appellant.

Edgar I. Shane, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**FRANSON, J.**—The People appeal from an order dismissing an indictment against respondent on the ground that the delay in prosecution denied him due process of law.

On March 8, 1972, respondent was indicted for selling heroin to a minor in violation of Health and Safety Code section 11502 (now § 11353), The sale was alleged to have occurred on or about May 20, 1971.

Respondent was arraigned on the indictment on April 10, 1972. He entered a plea of not guilty, waived time for trial, and trial was set for May 15, 1972.

On April 27, 1972, respondent filed a motion to dismiss the indictment, alleging that he had not been accorded a speedy trial as

guaranteed by the Sixth Amendment of the United States Constitution and article I, section 13, of the California Constitution.[1]

Respondent filed an affidavit in support of his motion to dismiss; the essential allegations are as follows: Respondent did not know the nature of the charges against him until he was arraigned on April 10, 1972. The passage of time, almost 11 months, between May 20, 1971 and April 10, 1972, resulted in his having a complete inability to account for his whereabouts on May 20, 1971. Because he has no present knowledge of his whereabouts on the date of the alleged crime it is impossible for him to provide his counsel with any information or sources of information which might develop evidence usable for his defense. Respondent further alleged that he believes that Officer McDonough, who was identified in the indictment as one of the witnesses called before the grand jury, participated in dozens of similar investigations and is expected to be called as a witness against many defendants; that he believes "that the sheer number of defendants as to which Officer McDonough is to give testimony, plus the passage of time, inevitably results in police officer McDonough's being unable to recall in accurate detail all of the facts, circumstances, and background conditions surrounding the alleged offense."

In opposition to respondent's motion, the People filed a declaration under penalty of perjury of Modesto Police Lieutenant House, which can be summarized as follows:

He is the supervisor in charge of narcotic drug investigations. The specific narcotic "buy program" involved in this case began in February 1971 and continued until February 1972.[2] The first buy in the program was

---

[1]In respondent's affidavit filed in support of his motion, he also alleged that the delay deprived him of due process of law contrary to the Fourteenth Amendment. The federal and state constitutional right to a speedy trial arises only upon the filing of an indictment or information, or upon the imposition of actual restraint imposed by arrest and holding to answer on a criminal charge. A *preindictment delay* is governed by due process principles. (*United States* v. *Marion* (1971) 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455]; *Jones* v. *Superior Court*, 3 Cal.3d 734 [91 Cal.Rptr. 578, 478 P.2d 10]; *People* v. *Archerd*, 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421].)

[2]The affidavit describes the reason for the buy program: "This program was developed as a result of a continuously increasing level of drug abuse and illegal drug traffic within the community, and the failure of the existing 'agent-oriented' enforcement effort to produce any significant effect upon that traffic. It was apparent that enforcement methods would have to be changed, and a decision was made to use undercover police officers to work directly with agents and in making the actual buys themselves in order to speed up and make more effective the Department's enforcement effort. The officers selected began in the first half of February, 1971, to grow long hair and beards in order to be able to 'fit in' and more freely associate with the people involved in the drug traffic. Our plan was very simply to develop rapport with these people and

made on March 29, 1971, and the last one on February 18, 1972. The program was staffed by a sergeant, a detective, and three undercover officers who developed and used a total of six private-citizen agents. The program involved a minimum of 500 contacts with narcotics and dangerous drug pushers, and a total of 191 buys were consummated. As a result of the program the grand jury returned a total of *128 indictments*. It took more time than originally estimated for the officers to make contact and develop rapport with the underworld sufficient to establish communications necessary to identify major sources of drugs and narcotics traffic in the area. The three undercover officers worked separately as well as jointly, depending on the circumstances; they made case reports of offenses at the station during nighttime hours as soon as practicable after a purchase had taken place. The officers worked closely with private-citizen agents and premature exposure of the connection of the agents with the officers would have seriously jeopardized the effectiveness of officers and agents still engaged in the program.

The transcript of the grand jury proceedings dated March 8, 1972, discloses the following relevant facts concerning the charges against respondent: On May 20, 1971, Officer McDonough learned from a female informant who apparently resided at 601 Leon Avenue in Modesto, that respondent had heroin to sell. Julie Souza, who had just attained the age of 19, was working as an agent in the undercover program. On May 20, 1971, she went to the residence at 601 Leon Avenue with Officer McDonough and two other undercover officers. After searching the residence as well as making a cursory search of Julie and the female informant, Officer McDonough gave $25 in cash to the females with which to purchase heroin from respondent. About an hour later, between 1 and 1:30 a.m., respondent came to the residence and offered a small tinfoil containing a small amount of heroin to Julie, for which she gave him the $25. Officer McDonough and the two undercover officers were in an adjoining bedroom and overheard most of the conversation pertaining to the sale. After respondent left, the officers immediately went into the living room, where Julie turned over to them the small tinfoil containing white powder, which tested out to be heroin. It appears from the testimony of both Julie and Officer McDonough that if the case goes to trial there will be at least two and perhaps three persons in addition to Julie

---

to establish the kind of communications necessary to permit us to identify the major sources of the drug and narcotic traffic in this area. Once these sources were identified, we hoped to be able to use the contacts we had developed to make the buys that are necessary in building criminal cases for such violations. These cases were to be presented to the Grand Jury for action, and then arrests were to be made which we hoped would shut off the major sources of supply to this community."

and Officer McDonough to testify against respondent as to the circumstances of the sale.

On May 5, 1972, a hearing was held regarding the motion to dismiss; other than the affidavits, no evidence was presented. The trial court dismissed the indictment on the ground that respondent had been denied due process of law by reason of the delay in prosecution.

■ The test for determining whether a defendant has been denied the right to a speedy trial by reason of postindictment delay, as well as due process arising from a preindictment delay, is to weigh the prejudicial effect of the delay, if any, against the justification for the delay. (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 741, fn. 1; *Penney* v. *Superior Court,* 28 Cal.App.3d 941, 951-952 [105 Cal.Rptr. 162]; *People* v. *Bethea,* 18 Cal.App.3d 930, 939 [96 Cal.Rptr. 229].) Where both prejudice and justification are found the court must balance the public's interest in the administration of justice against the defendant's right to a fair trial. (See *United States* v. *Marion,* 404 U.S. 307 [30 L.Ed.2d 468, 92 S.Ct. 455]; *Jones* v. *Superior Court, supra; People* v. *Wright,* 2 Cal.App.3d 732, 735-737 [82 Cal.Rptr. 859]; *Penney* v. *Superior Court, supra.*)

■ Respondent's statement in his affidavit that because of the 11-month delay (from May 20, 1971 to April 10, 1972) he is unable to account for his whereabouts on May 20, 1971, is sufficient to support a finding that he suffered prejudice from the delay in prosecution.[3] (*Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 740; *People* v. *Archerd, supra,* 3 Cal.3d at p. 640; *People* v. *Wright, supra,* 2 Cal.App.3d at p. 736.) Unduly delaying the arrest or indictment of an accused may hinder his ability to recall or reconstruct his whereabouts at the time the alleged offense occurred. (*People* v. *Wright, supra,* 2 Cal.App.3d at p. 736.) The trial court's implied finding of prejudice must stand. (*People* v. *Mitchell,* 8 Cal.3d 164, 167 [104 Cal.Rptr. 348, 501 P.2d 916].)

A showing of prejudice having been made by respondent, the burden

---

[3]Under the facts there are three periods of delay; first, the 9-month period from May 20, 1971, to February 18, 1972, the date of the last buy under the program; second, the 18-day period from the date of the last buy to March 8, 1972, the date of the indictment; and finally, the 31-day period from the date of the indictment to the date of arraignment. While respondent did not so allege, we presume that he had in fact lost his ability to recall his whereabouts on the day of the alleged crime as of the time of his indictment on March 8, 1972. This being so, he was not prejudiced by the delay after the date of the indictment. The due process issue is thus framed: was the 9½ months' delay from the date of the alleged sale to the *date of indictment* reasonable in light of the prejudice shown by respondent? As hereinafter explained, we answer this question in the affirmative.

shifts to the People to establish a legitimate justification for the delay. (*Penney* v. *Superior Court, supra,* 28 Cal.App.3d at p. 953.)

The affidavit of Lieutenant House shows an indispensable and well-planned undercover operation in the Modesto area for approximately nine months after the alleged sale by respondent. As stated in *People* v. *Wright, supra,* 2 Cal.App.3d at page 736: "The necessity of using undercover agents to detect violations of the narcotic laws is obvious. '[I]t is within the realm of common knowledge and common sense that uniformed or otherwise known policemen are unable to penetrate the *sub rosa* world of the narcotics peddler. Extensive, time-consuming investigations by undercover operatives, who daily risk their lives, are required to get to the retail and wholesale sources of illicit narcotics.' [Citations.] It is equally obvious that the effectiveness of such an agent does not survive the time it becomes known that he is a policeman. The public thus has a substantial interest in keeping the officer's identity secret for a reasonable period of time while he continues his investigations. This public interest is a legitimate reason for delaying the arrest of an individual wrongdoer. [Citation.] The courts have recognized this fact, and the cases are legion which have upheld the use of narcotic 'buy' programs as acceptable police practice. [Citations.]" (See also *Powell* v. *United States,* 352 F.2d 705, 708; *People* v. *Superior Court,* 5 Cal.App.3d 698, 703-704 [85 Cal.Rptr. 327]; *People* v. *Alvarado,* 258 Cal.App.2d 756, 760-761 [66 Cal.Rptr. 41]; *People* v. *Gilmore,* 239 Cal.App.2d 125 at pp. 129-130 [48 Cal.Rptr. 449]; *People* v. *Crowder,* 257 Cal.App.2d 564, 566 [64 Cal.Rptr. 913]; *People* v. *Wilson,* 239 Cal. App.2d 358, 365 [48 Cal.Rptr. 638].)

The People have shown a legitimate justification for the delay in completing the buy program through February 18, 1972. The 18-day delay from February 18, 1972, to the date of respondent's indictment is also reasonable when we consider the number of indictments being then processed through the grand jury.[4]

Both prejudice and justification for the preindictment delay having been established the trial court was required to resolve the due process question by evaluating the prejudice shown in relation to the justification

[4]While there is no explanation in the record for the 31-day delay in arraigning respondent after the indictment, the record shows that respondent's trial date was set within 60 days of the indictment as provided by Penal Code section 1382.

In any event, as previously mentioned (fn. 3) we presume that by the date of the indictment, respondent had already lost his ability to recall his whereabouts on the day of the alleged sale; hence he cannot complain of prejudice as a result of the delay after the indictment. We conclude, as apparently did the trial court, that respondent was not denied a right to a speedy trial.

for the delay. In this balancing process we believe that it necessarily should have considered the evidence of respondent's guilt as shown by the testimony before the grand jury.[5] For example, in a typical street sale of narcotics, where the prosecution's case rests on the testimony of one witness, usually an undercover agent who has no independent recollection of the events of the sale, the courts have recognized the danger of misidentification of the defendant and hold that it would be unfair to require him to stand trial where he makes a plausible claim of loss of memory. (See *Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 740; *Ross* v. *United States* (1965) 349 F.2d 210 [121 App.D.C. 233]; *Woody* v. *United States* (1966) 370 F.2d 214 [125 App.D.C. 192]; cf. *Morrison* v. *United States* (1966) 365 F.2d 521, 523 [124 App.D.C. 330]; see dissent *Daniels* v. *United States* (1966) 357 F.2d 587, 590 [123 App.D.C. 127].) In such a situation the prejudice is *substantial* and outweighs the justification for the delay.

However, where the evidence of guilt is strong enough to preclude any reasonable danger of misidentification, a defendant's bare statement, "I can't recall," standing alone, realistically cannot be considered more than *minimal prejudice* when weighed against the justification for the delay.[6] Here, we suggest that the defendant's claimed inability to reconstruct his whereabouts on the day in question is less important in our system of criminal justice than the public's interest in bringing him to trial; placing the competing interests in juxtaposition the public interest must prevail.

Taking the evidence of guilt into account in the balancing process is

---

[5]Although we have not seen this principle expressly articulated in any reported cases to date, it appears to state the rationale underlying the decisions in this area. In *Morrison* v. *United States* (1966) 365 F.2d 521, 523 [124 App.D.C. 330], the court stated: "[I]n the present case, there was substantial corroboration of the identification made by the narcotics agent, whereas the prosecution's case in *Ross* rested solely on the uncorroborated testimony of the agent, a factor emphasized in that opinion. The narcotics agent here saw and recognized the Appellant on numerous occasions other than the one on which he said appellant sold narcotics, whereas no such repeated opportunities to confirm the identification appeared in *Ross*." See also *Daniels* v. *United States* (1966) 357 F.2d 587 at page 590 [123 App.D.C. 127], where Chief Justice Bazelon (dissenting on another point) relied upon corroboration of the undercover agent's identification of the defendant by another witness and stated: "The risk of conviction of an innocent person—the basic concern of the narcotics delay cases—was no greater here than in the ordinary criminal case."

If the evidence of guilt is not considered relevant in the balancing process, then a defendant will be entitled to a dismissal in all cases where there is a substantial delay in prosecution as a result of a valid police purpose simply by claiming an inability to recall the events in question. Such a rule would be untenable.

[6]Evidence of guilt is also relevant to the reasonableness of the length of the delay. Where there is strong evidence against the defendant a longer delay should be tolerated than where the evidence is slight—assuming, again, a valid police purpose for the delay.

not inconsistent with the rule that the accused is presumed to be innocent. (See *Jones* v. *Superior Court, supra,* 3 Cal.3d at p. 741.) At this stage of the proceeding, the trial court is deciding only whether the defendant shall be required to stand trial; he remains cloaked in the presumption of innocence and will receive the benefit of all of the constitutional and statutory safeguards of our judicial system to ensure that he will receive a fair trial.

In the case at bench the record indicates that the trial court did not consider the prosecution's evidence against respondent in reaching its decision that he would be denied due process of law if forced to stand trial. We believe the case should be remanded to allow the trial court the opportunity to consider the evidence of guilt and to reevaluate respondent's showing of prejudice in the light thereof. We note that respondent asserts additional prejudice resulting from Officer McDonough's participation in other similar investigations alleging the officer is unable to recall the facts and circumstances surrounding the alleged offense. However, Officer McDonough's testimony before the grand jury suggests that he had a clear recollection of the facts of the alleged sale. While he may have refreshed his memory by use of notes, the affidavit of Lieutenant House shows that the officers made case reports of offenses at the police station during night time hours as soon as practicable after a purchase had taken place; in the absence of evidence to the contrary, it is reasonable to presume that the notes are accurate. The testimony also indicates that Officer McDonough knew both respondent and his brother prior to the date of the alleged sale. It cannot be said that Officer McDonough's identification of respondent is weak. Additionally, Julie and the other undercover officers and agents who were present in the house at the time of the sale and who either observed the sale or overheard the conversation pertaining thereto presumably will be available to testify at the trial.

The order of dismissal is reversed; the cause is remanded with instructions to the trial court to reopen the hearing on respondent's motion to dismiss and, on the basis of the evidence now in the record and any other evidence the parties wish to present, to reconsider respondent's plea of a deprivation of due process in accord with the principles enunciated herein.

Brown (G. A.), P. J., and Gargano, J., concurred.