[Crim. No. 1497. Fifth Dist. Dec. 11, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CAROLYN LORRAINE PATEJDL, Defendant and Appellant.

**COUNSEL**

Lawrence D. Sassone, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Eddie T. Keller and Robert E. Barton, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Carolyn Lorraine Patejdl appeals from a judgment of the court, sitting without a jury, finding her guilty of violating Health and Safety Code section 11503[1] (offering to sell a narcotic and selling another substance in lieu thereof).

On the morning of April 6, 1971, one Lester Webb, an agent for the Modesto Police Department involved in a narcotics "buy" program, arranged to meet appellant at about 4 p.m. at "The Don's Bar" in Modesto for the purpose of purchasing narcotics.

Webb was equipped with a transmitter under his shirt which was supposed to have transmitted the conversation at the arranged meeting between Webb and appellant to a tape recorder located in a car occupied by two detectives of the Modesto Police Department. The car was parked across the street from The Don's Bar and within view of Webb's car which was parked next to the bar.

Webb entered the bar with $15 which had been furnished to him by the

---

[1]Now Health and Safety Code section 11355.

police department for the purpose of purchasing 10. "hits" of mescaline at $1.50 per "hit." Upon entering the bar, Webb approached appellant and indicated that he now had the money, and appellant replied that she had the pills. Appellant and Webb then went outside and entered Webb's car. While inside the car Webb gave $15 to appellant in exchange for 10 orange-colored capsules containing white powder with dark spots. While appellant and Webb were in the car the two detectives from the Modesto Police Department observed their activity and overheard their conversation through the monitor in the police vehicle.

After about 10 minutes appellant and Webb emerged from the car and returned to The Don's Bar. Shortly thereafter Webb left the bar and got into his car and drove to a prearranged meeting place with the officers, where he delivered to them the 10 pills.

At trial counsel stipulated that the pills did not contain any narcotic or restricted dangerous drug.

Appellant's principal defenses were entrapment and lack of knowledge that the pills were not narcotic. She testified in her own behalf and produced three witnesses who had known her over the years and each of whom recalled the events about which they testified without any demonstrated difficulty in recollection. One of the witnesses she called was Mary Salazar, a friend, who was at the bar on the afternoon in question and with whom she was playing pool. Mary Salazar saw Webb and appellant talking and said Webb was always trying to buy narcotics. On other occasions he had approached Mary Salazar a number of times trying to buy some. She said that after appellant and Webb returned to the bar after completing the transaction at Webb's car she told appellant that she thought Webb was a "snitch."

Appellant was able to recount the times, places and most of the conversation and transaction with Agent Webb with no apparent difficulty. She said that Webb asked her for some narcotics because he wanted to make a little money, that she had never sold or dealt in narcotics before, that she obtained the pills from another friend and that she in fact thought the substance was a narcotic.

The several grounds for reversal urged by the appellant will be treated in order.

### REFUSAL TO ORDER DISCOVERY OF AGENT WEBB'S ADDRESS

Lester Webb, the informant, was employed between March 1971 and July 1972 by the Modesto Police Department as an undercover agent

except for a period between July 1971 and January 1972, during which period he was working in the same capacity in Tuolumne County which adjoins Stanislaus County. Prior to trial the court had a hearing on appellant's motion to discover the address of Agent Webb.

At the hearing Agent Webb testified that his activities were responsible for 31 indictments on various narcotics charges in the Modesto area and that he and his family had received numerous threats from people he had "busted" and other anonymous callers; that he had been shot at by two persons from Modesto some eight and one-half months earlier, the bullet having gone through the windshield of his car and missed him by several inches; that he had to change his telephone number four times; and that he does not reside under his own name. The court found that there was a real danger to Webb's personal safety and denied the motion to disclose his address but ordered the district attorney to produce Webb for examination by defense counsel. Such an examination was subsequently conducted at appellant's counsel's office but his address was not revealed.

The motion to disclose was not renewed at trial, and appellant's trial counsel did not attempt to obtain the information by cross-examination at the trial.

As we have indicated, appellant's defense was entrapment and lack of knowledge that the substance was not a narcotic. We have carefully reviewed the record and, with one exception, there is no conflict of substance between the testimony of Agent Webb and that of appellant bearing upon the transaction or these defenses. They agree that Webb approached her and asked her for some "dope" and she did not approach him. They agree that he was the moving force in the transaction. She testified that she thought the pills were a narcotic. The one exception is Webb's testimony that during the transaction he and appellant discussed the effects of mescaline and appellant stated that she had "cut" the capsules herself seven parts to one. Although appellant denied such a discussion this testimony, which was generally supported by the officers who monitored the conversation, tends to support rather than defeat appellant's defense of lack of knowledge that the pills were not narcotic.

In addition, it appears that Lester Webb had been known to the appellant by that name for about a year and a half, she having worked for him as a cocktail waitress in a bar when he was the manager-bartender; that he had dated her socially about three times during that period; and it also is apparent that Webb's wife was known to her principal witness, Mary Salazar.

In *Smith* v. *Illinois* (1968) 390 U.S. 129, 131 [19 L.Ed.2d 956, 958-959, 88 S.Ct. 748], the court held that the denial of the right to cross-examine a testifying informer concerning his true name and address constituted a denial of due process where the only real question at trial was the relative credibility of the prosecution witnesses and the defendant. The court said: "Yet when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." (Fn. omitted.)

The *Smith* court relied in part upon *Alford* v. *United States* (1931) 282 U.S. 687 [75 L.Ed. 624, 51 S.Ct. 218], where the court stated: "It is the essence of *a fair trial* that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. [Citations.]" (Italics added; 282 U.S. at p. 692 [75 L.Ed. at p. 628].)

It is thus apparent that the Supreme Court has equated the refusal to disclose identity and address of a witness to the right to confront witnesses and to a fair trial under the due process clause. Our own Supreme Court in *People* v. *Goliday* (1973) 8 Cal.3d 771, 777 [106 Cal.Rptr. 113, 505 P.2d 537], recently had occasion to comment upon the informer's privilege contained in Evidence Code section 1041 as it relates to the constitutional requirements of disclosure in order to assure the defendant a fair trial. The court there observed: "The common law informer's privilege—the privilege against disclosure of the identity of persons who supply the government with information concerning the commission of crimes—now lies embedded in Evidence Code section 1041. As we said in *People* v. *Garcia* (1967) 67 Cal.2d 830 [64 Cal.Rptr. 110, 434 P.2d 366], however, 'the official identity-of-informant privilege must yield when it is shown that the informant whose identity is sought is a material witness for the defense and nondisclosure *would deprive the defendant of a fair trial.* In such cases, it is clear that the "balance" is struck in favor of the defendant, and disclosure must be ordered upon pain of dismissal. . . . [O]nly after it [is] first determined that the informant "is not a material witness to the guilt or

innocence of the accused" ' can disclosure be denied. (Italics in the original.)" [Citations.] (Fns. omitted.)[2]

■ It is clear that disclosure need not be made when the informer is not a material witness on the issue of guilt. (*People* v. *Goliday, supra,* 8 Cal.3d 771, 782, 783-784.) The decisional precedents wherein disclosure of the address and identity has been required are in factual contexts wherein the informer's testimony is the primary evidence on the issue of guilt and the conflict between the testimony of the defendant and that of the informer is crucial and determinative; as has been said, ". . . the credibility of the two opposing witnesses constitutes the fulcrum upon which the determination of the defendant's guilt or innocence must be balanced." (*People* v. *Brandow* (1970) 12 Cal.App.3d 749, 755 [90 Cal.Rptr. 891]; see *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 88 [104 Cal.Rptr. 226, 501 P.2d 234]; *Price* v. *Superior Court* (1970) 1 Cal.3d 836, 842-843 [83 Cal. Rptr. 369, 463 P.2d 721]; *Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 167-169 [74 Cal.Rptr. 233, 449 P.2d 169]; *People* v. *Mascarenas* (1971) 21 Cal.App.3d 660, 666-668 [98 Cal.Rptr. 728].) ■ However, where, as in the case at bench, there is no substantial conflict between the testimony of the defendant and that of the informant on the issues determinative of guilt, logic and reason would be ill served by requiring disclosure of the address since the defendant's need to impeach the informant has been diminished, if not eliminated, and there is no possibility that impeachment would have an effect on the outcome of the trial. It is manifest that in such circumstance the defendant has not been deprived of his right to confront or to cross-examine in any meaningful way nor has he been deprived of a fair trial.

Additional facts here substantiate the fairness of this result. The appellant had known the informer Webb as of the time of the sale for over one

[2]What vitality remains in the sensible balancing principle announced in *Roviaro* v. *United States* (1957) 353 U.S. 53 [1 L.Ed.2d 639, 77 S.Ct. 623] is not clear, though the case has not been expressly or impliedly overruled. In that case the United States Supreme Court announced: "A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." (At pp. 60-61 [1 L.Ed.2d at p. 645]; fn. omitted.)

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." (At p. 62 [1 L.Ed. 2d at p. 646].) (See also *People* v. *Garcia* (1967) 67 Cal.2d 830, 841-842 [64 Cal. Rptr. 110, 434 P.2d 366].)

and one-half years on a rather intimate basis and knew his name and occupation. She had the opportunity to and did engage in pretrial and trial cross-examination of the informer on every phase of the case except obtaining his address. There was explicit evidence of specific threats and other incidents from which it was obvious that his life would have been put in danger had the address been disclosed. "It does not take a lively imagination to realize that, in view of the violence found in the world of the narcotic pusher and user, disclosure might constitute a death warrant for the informer. . . ." (*People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 80 [103 Cal.Rptr. 583].)

We conclude under the facts of this case the trial court did not err in refusing to disclose the address of Lester Webb.

### PREINDICTMENT DELAY

The sale took place on April 6, 1971. The indictment was not returned until March 13, 1972, a delay of eleven months and seven days. Appellant asserts that this delay resulted in a denial of her right to due process and to a speedy trial.

Appellant's affidavit in support of her motion to dismiss alleged only that the delay put her in a position of ". . . limited effectiveness in discovering all those persons who may have been present at the time of the alleged offense," and at the trial she said she could not remember all of the people who were at the bar that day. However, it must be remembered that the sale admittedly took place at Webb's car outside the bar and only appellant and Webb were present. Aside from the two police officers who monitored the conversation from across the street, no one witnessed the transaction. Therefore, insofar as her defense of entrapment is concerned, there are no disputed facts. It is admitted that Webb approached her for the buy, and Mary Salazar's testimony that he was always approaching people to buy narcotics is uncontradicted. Appellant does not attempt to establish any other facts in support of her theory of entrapment nor try to show that there is anyone who is now missing who could testify to facts other than those that were before the court.

Though appellant claims deprivation of a speedy trial under the Sixth Amendment of the United States Constitution, the cases hold that the rights guaranteed under that amendment do not arise until the defendant is formally charged. (*United States* v. *Marion* (1971) 404 U.S. 307, 321-322 [30 L.Ed.2d 468, 479, 92 S.Ct. 455]; *People* v. *Archerd* (1970) 3 Cal.3d 615, 639 [91 Cal.Rptr. 397, 477 P.2d 421]; *Penney* v. *Superior Court*

(1972) 28 Cal.App.3d 941, 950 [105 Cal.Rptr. 162].) Appellant's Sixth Amendment claims are therefore without merit.

However, under some circumstances a preindictment delay such as the one here involved may constitute a denial of due process. (*Jones* v. *Superior Court* (1970) 3 Cal.3d 734, 741, fn. 1 [91 Cal.Rptr. 578, 478 P.2d 10].) The test for determining whether a defendant has been denied due process by a preindictment delay is to weigh the prejudicial effect, if any, of the delay against the justification for the delay. (*Jones* v. *Superior Court, supra,* 3 Cal.3d 734, 741, fn. 1; *People* v. *Vanderburg* (1973) 32 Cal. App.3d 526, 531 [108 Cal.Rptr. 104].)

The delay in the instant case was caused by an extensive narcotics "buy" program in the Modesto area which was described by this court in *People* v. *Vanderburg, supra,* 32 Cal.App.3d 526, reference to which is made for a detailed description. The "buy program" began in February 1971 and continued through February 1972.

Such a program constitutes strong justification for a delay in returning indictments. As explained in *People* v. *Wright* (1969) 2 Cal.App.3d 732, 736 [82 Cal.Rptr. 859]: "The necessity of using undercover agents to detect violations of the narcotic laws is obvious. '[I]t is within the realm of common knowledge and common sense that uniformed or otherwise known policemen are unable to penetrate the *sub rosa* world of the narcotics peddler. Extensive, time-consuming investigations by undercover operatives, who daily risk their lives, are required to get to the retail and wholesale sources of illicit narcotics.' [Citations.] It is equally obvious that the effectiveness of such an agent does not survive the time it becomes known that he is a policeman. The public thus has a substantial interest in keeping the officer's identity secret for a reasonable period of time while he continues his investigations. This public interest is a legitimate reason for delaying the arrest of an individual wrongdoer. [Citation.]"

The cases are legion that have justified delays based upon such "buy" programs. (*People* v. *Vanderburg, supra,* 32 Cal.App.3d 526; *People* v. *Alvarado* (1968) 258 Cal.App.2d 756 [66 Cal.Rptr. 41]; *People* v. *Wilson* (1966) 239 Cal.App.2d 358 [48 Cal.Rptr. 638] (disapproved on other grounds, *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 852, fn. 5 [83 Cal.Rptr. 586, 464 P.2d 42]); *People* v. *Crowder* (1967) 257 Cal.App.2d 564 [64 Cal.Rptr. 913]; *People* v. *Gilmore* (1965) 239 Cal.App.2d 125 [48 Cal.Rptr. 449], cert. den. 385 U.S. 961 [17 L.Ed.2d 307, 87 S.Ct. 403].)

There is no hard and fast rule establishing how much delay in the de-

fendant's arrest constitutes a denial of due process. (*People* v. *Wright, supra,* 2 Cal.App.3d 732, 736.) The issue becomes whether the justification underlying the secrecy of the narcotics "buy" program outweighs the prejudice, if any, to the appellant.

■ As we have pointed out, the appellant has failed to show any significant prejudice caused by the alleged preindictment delay in loss of material witnesses or fading memories. If there was any prejudice, it was slight and speculative at best and was outweighed by the substantial justification for the delay.

### UNAVAILABILITY OF THE TAPE RECORDING

■ Upon appellant's motion to discover the tape recording of the conversation between appellant and Webb, the prosecution indicated that the tape recording could not be found. At the hearing on this issue Officer Hatton testified that he and several other officers had thoroughly searched the office and examined all the tapes there without success. He also testified that immediately after the sale occurred he attempted to replay the tape in his office but nothing came out. When asked whether the tape was inaudible or simply blank, Officer Hatton said that he did not recall. He did state, however, that after attempting to play the tape he determined it was unusable and placed it in a drawer with the other tapes to be reused. In rebuttal, evidence was brought which indicated that another tape made the same day was good, and that if tapes are garbled the police department has on other occasions taken them to a technician in San Francisco to have the garbled or inaudible parts corrected. At the end of the hearing the court found that the tape was not evidence of any conversation and thus denied the motion to dismiss. Inasmuch as this finding is supported by substantial evidence, it is conclusive on appeal. (See *People* v. *Goodman* (1971) 20 Cal.App.3d 284, 287 [97 Cal.Rptr. 534]; *People* v. *Burch* (1961) 196 Cal. App.2d 754, 762-763 [17 Cal.Rptr. 102].) Accordingly, the tape was no evidence at all since it could not "throw light on issues in the case" (*People* v. *Carter* (1957) 48 Cal.2d 737, 752 [312 P.2d 665]) and the failure to produce it was nonprejudicial.

### ALLEGED MISCONDUCT OF PROSECUTING ATTORNEY

■ At the beginning of the first day of trial, during a pretrial motion, the district attorney announced to the court that there was presently on file in the municipal court an action against appellant and that as soon as possible after the hearing, during a recess, the police intended to arrest her. Upon counsel's objection the judge stated, "As far as I'm concerned, I'm

going to try this case on the facts presented here. I don't know whether this is a parking ticket or what it is that they have outstanding, and I don't want to hear any evidence in that respect unless it is otherwise admissible."

The district attorney's statement was improper and should not have been made. However, it falls short of "a dishonest act or an attempt . . . to persuade the court . . . by the use of deceptive or reprehensible methods" (*People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913]). In view of the trial having been before the court without a jury, it was patently nonprejudicial. It is manifest that a result more favorable to appellant would not have occurred but for the improper conduct. (*People* v. *Sims* (1968) 264 Cal.App.2d 427, 430-431 [70 Cal.Rptr. 280].)

The judgment is affirmed.

Gargano, J., and Franson, J., concurred.